# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70337-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES ALAN CHAPPELLE, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 22, 2014 |
| | ) | |

VERELLEN, A.C.J. — Charles Chappelle appeals his conviction for second degree assault, claiming that the trial court erred when it discharged defense counsel and permitted him to represent himself on the second day of trial and that he lacked the necessary materials to conduct an adequate pro se defense. He additionally argues that he was denied his right to effective, conflict-free counsel at his motion for a new trial. Viewing the record as a whole, Chappelle knowingly, intelligently and voluntarily waived his right to counsel. He was also provided with reasonable accommodations given the late date at which he requested to represent himself. Furthermore, Chappelle fails to show that defense counsel appointed to represent him in his motion for a new trial possessed an actual conflict of interest affecting her performance. Finally, the argument in Chappelle's statement of additional grounds lacks merit. Accordingly, we affirm.

## FACTS

On June 9, 2012, Amr Elshahawany and several friends were celebrating a birthday at a nightclub in downtown Seattle. The group left the nightclub when it closed, and Elshahawany entered a nearby alley to urinate. Elshahawany noticed Chappelle standing nearby and staring at him. The two men exchanged words. Elshahawany then saw something come out of Chappelle's hand and felt Chappelle hit him in the face. Elshahawany suffered a deep laceration that went all the way through his cheek. He lost three liters of blood before medical personnel were able to stop the bleeding and repair the wound. The State charged Chappelle with second degree assault with a deadly weapon.

Carlos Gonzales of Northwest Defenders Association was assigned to represent Chappelle. At the omnibus hearing on October 26, 2012, Chappelle filed a pro se motion to dismiss and motion for change of counsel. The court informed Chappelle that it would not hear his motion to dismiss because Chappelle was represented by counsel but would hear his motion for change of counsel. Chappelle argued:

> I'd like to change counsel because my witnesses haven't been seen, um, I haven't, um, had any real representation, I've been working on another case the whole time, a higher profile case, and I'm just now at trial. And also the State wants to amend the charges, and I was being forced to go to trial first on the assault two with a deadly weapon. Now the State wants to amend the charges, and like I said, I have -- witnesses haven't even been called upon, I haven't been given fair representation.[1]

Gonzales responded that he had attempted to contact Chappelle's proposed witnesses multiple times but was unsuccessful. The court denied Chappelle's motion.

---

[1] Report of Proceedings (RP) (Oct. 26, 2012) at 4.

On November 8, 2012, the first day of trial, the State and Gonzales argued

pretrial motions. Chappelle did not express any dissatisfaction with Gonzales.

However, on November 13, 2012, the second day of trial, Chappelle attempted to file

another pro se motion prior to jury selection. Though it was not clear what relief he was

seeking, Chappelle's motion contained the phrases "council [sic] refused to call

witness," "affidavit of prejudice" and "to change council [sic]."[2] Gonzales stated,

> So I don't feel comfortable handing this up, your Honor. But it just seems
> unclear what . . . he wants to do is discharge counsel or to go pro se.
> That's what I'm unclear about, because even after being told by the court
> [not] to file motions he's still trying to file motions.[3]

The following exchange occurred:

GONZALES:    Well, do you want to make a motion to discharge me or make a motion to go pro se?

DEFENDANT:    Yes. I make a motion to discharge counsel. This is affidavit of prejudice. I have been trying to --

THE COURT:    Excuse me. Just a second. An affidavit of prejudice? Against who? Me?

DEFENDANT:    Affidavit of the prejudice against Court. Period. Out of the interests for --[4]

The trial court attempted to ascertain Chappelle's intentions, explaining that Chappelle

could not file an affidavit of prejudice because it had already made discretionary rulings.

Chappelle clarified his intention:

---

[2] Clerk's Papers at 61-69.

[3] RP (Nov. 13, 2012) at 5.

[4] Id. at 5-6.

This affidavit is, yes, to take you off the case. To take my counsel off the case. I haven't been getting a fair representation, I don't feel, the whole time. The motions that I want to have filed from the beginning when I was injured . . . haven't been filed. There are no witnesses that's the -- I never went to sign continuance in any speedy rights, and none of that, all this whole time they try force me to go to trial without seeing police reports, and no witness there first. And another judge overturned that. So the whole time I had -- I haven't been represented all the issues that's really been going on with me.[5]

Chappelle then proceeded to complain about his health problems and his treatment by jail staff. The trial court continued to attempt to ascertain what Chappelle wanted:

GONZALES: I think the only timely motion in front of this Court is questionable. Timely is the motion to discharge counsel, but other than that an affidavit of prejudice, I think, is, since you made rulings already, it's too late for an affidavit.

[PROSECUTOR]: Correct. I think the only motion he's close to making at this point is a motion to discharge counsel, and I don't know if that's really what he wants to do or not.

THE COURT: You want to be without counsel? You want to represent yourself?

DEFENDANT: No. I have actually had several lawyers that try to take my case. I try to change counsel, and motion to deny -- was denied. All my motion to dismiss was denied. All my motions are never heard. Not given a chance to speak. No. No, you can't speak. They never address any of my issues. Oh, no. No. No. Because we don't want this on the record. The whole time. No, you can't speak. Oh, you can't speak on any issues. When these are actually issues that's going on. Ongoing with me.

THE COURT: If that's a motion to go pro se, it is very equivocal.

GONZALES: Well, pro se means do you want to represent yourself?

THE COURT: Are you asking to represent yourself?

DEFENDANT: Yes.

---

5 RP (Nov. 13, 2012) at 7.

4

THE COURT:    You -- yes.  You want to go without counsel?

DEFENDANT:    If I have to go with an intern, whatever I have to do.  I'm trying here.

THE COURT:    A what?

DEFENDANT:    If I have to get help, yes, I represent myself too.  I have been representing myself the whole time basically.

COURT:    I wouldn't say, that's still a pretty equivocal statement, counsel.  Are you attempting to discharge --

DEFENDANT:    Yes.

COURT:    -- Mr. Gonzales, and to represent yourself pro se in this case?

DEFENDANT:    Yes.

COURT:    You understand that if I allow Mr. Gonzales to be discharged, you will be by yourself through the entire case representing yourself?

DEFENDANT:    Yes.

COURT:    You will be required to follow appropriate --

DEFENDANT:    Yes.

COURT:    And when I make motions and in limine rulings you will be required to abide by them.

DEFENDANT:    Yes.[6]

After briefly involving Chappelle's uncle in the inquiry, the colloquy continued.

DEFENDANT:    Okay.  Yes, sir.  I want to go forward.  I want to go pro se.  I do want co-counsel.

THE COURT:    There is no co-counsel.

DEFENDANT:    No co-counsel?

---

[6] RP (Nov. 13, 2012) at 10-12.

5

THE COURT: You go pro se, you represent yourself.

DEFENDANT: Okay. Well, that's fine.

THE COURT: You represent yourself, you are up here, you make all your own decisions. You have no lawyer.

DEFENDANT: Okay.

THE COURT: You understand that? You are facing a -- I'm told that if convicted you will have an offender score of a seven. You will have a standard range of 43 to 57 months, plus enhancement for the deadly weapon.

DEFENDANT: That's fine. I never had a deadly weapon.

THE COURT: Let me finish. So you are looking at a range of 55 to 69 months and a $10,000 fine.

DEFENDANT: Okay.

THE COURT: With maximum sentence of 120 months.

DEFENDANT: Okay.

THE COURT: You ever study anything about the law?

DEFENDANT: Just incarcerated.

THE COURT: You have been incarcerated, but never formally studied the law?

DEFENDANT: No.

THE COURT: Have you ever represented yourself in the past?

DEFENDANT: No, I have not.

THE COURT: Have you ever attempted to represent anyone in a court of law?

DEFENDANT: I have not. I have attempted but --

THE COURT: You know you are charged with assault in the second degree, which is a more serious offense, which is also a strike offense?

DEFENDANT: Yes.

THE COURT: I already told you what the potential sentences are; do you understand that?

DEFENDANT: Yes, I do.

THE COURT: You understand you represent yourself[,] I will not tell you how to try the case or involve in any way, give you legal advice?

DEFENDANT: Yes.[7]

The trial court briefly quizzed Chappelle on his knowledge of the rules of evidence and criminal procedure, with which Chappelle demonstrated some familiarity.

THE COURT: Anyone put any pressure on you to waive right to counsel?

DEFENDANT: No.

THE COURT: So this is all your decision?

DEFENDANT: Yes.

THE COURT: Finally, is it your desire to be without an attorney in this case?

DEFENDANT: Yes.

THE COURT: You understand we are going to immediately start picking a jury?

DEFENDANT: Yes.

THE COURT: There are no continuances.[8]

Chappelle requested the trial court file the motion he had previously handed up, to which the trial court agreed.

---

[7] Id. at 13-14.

[8] Id. at 16.

THE COURT: Are you ready to start picking a jury?

DEFENDANT: Yeah. Start picking a jury today?

THE COURT: Yeah.

DEFENDANT: Okay.

THE COURT: As soon as we have got jurors. I don't know if we have jurors down there or not. Do we have enough jurors?

GONZALES: And, Your Honor, am I excused? This is the question I have for, your Honor. I'm on standby on another case, I don't know if you wanted me to --

THE COURT: I'm not having standby.

GONZALES: So inform 1201 I'm ready for my next trial?

THE COURT: You're ready for your next trial if his ultimate decision is unequivocal that he intends to represent himself, and he intends to stick by that decision throughout the whole trial and abide by my rulings. We are not going to hear anything about your claims against the police department and some other incidents.

DEFENDANT: No. It's not about claiming. I'm going to court for assault two, right? That's what I'm charged with?

THE COURT: That's right. Assault two with --

[PROSECUTOR]: Deadly weapon.

THE COURT: Deadly weapon.

DEFENDANT: Okay. Yup.

THE COURT: I will tell you it is a – you may be very bright. You may think you are doing the right thing. I would strongly advise against what you are doing. I think any judge who heard you would strongly advise against what you are doing, but you have a constitutional right to do it. And so long as you make the unequivocal decision to proceed pro se I am required to allow it. Now, is that your decision?

DEFENDANT:     That's my decision.

THE COURT:     Mr. Gonzales, you are hereby discharged.[9]

The deputy prosecutor clarified:

[PROSECUTOR]:  Right. And I wanted to also make it clear that he is not seeking a continuance even though Your Honor said you wouldn't give one, but I want to make it clear that he is not seeking a continuance and he is prepared to go today. That's the only thing I wanted to clear up.

DEFENDANT:     I would just like to file my motions to the court. I'm not seeking a continuance. I just like my paperwork to be filed to the court.[10]

After a recess to secure a venire, Chappelle again raised the issue of his representation:

DEFENDANT:     I would just like to ask at this time of the record, motion filed for me to have co-counsel, and also I would like for my jury instructions, ask for motion to find my jury instructions later, since I don't have them today with me. If I can file them tomorrow maybe.

THE COURT:     Let me suggest, sir, if you are pro se that a co-counsel representation does not exist. You either are represented by counsel or you are not. And you have unequivocally told me you wanted to discharge counsel. It was not a good decision. I told you it wasn't a good decision. But having co-counsel with yourself is not an arrangement that's recognized under our court system.

DEFENDANT:     Okay. Well, I just like, on the record, that I wanted to file a motion.

THE COURT:     What's that?

DEFENDANT:     Like to put on the record that I would like to file motion for counsel.

---

[9] Id. at 17-19.

[10] Id. at 20.

THE COURT:     For counsel?

DEFENDANT:     Uh-huh.

THE COURT:     You have already discharged counsel.

DEFENDANT:     Yeah, I wanted to discharge that counsel for ineffective assistance.

THE COURT:     That was not your motion. Your motion was to go pro se. I allowed that motion. Despite the fact that I told you that it was not a wise thing to do. You told me unequivocally you wanted to discharge counsel. I told you if you discharge counsel you were pro se, and you would remain pro se. As I understand it, your attorney has now gone off to try another case for a different defendant.[11]

A supporter of Chappelle's in the courtroom informed the trial court that what he believed Chappelle wanted was different court-appointed counsel, not to represent himself. Chappelle said, "Yes; that's correct."[12] The trial court explained:

Well, that was not the motion he made. The motion he made . . . was to go pro se. . . . I explained to him the hazards of going pro se. . . . I went through a long colloquy with him concerning his request to go pro se. I asked him if he was asking me unequivocally that he wanted to be pro se. I told him there would be no standby counsel. He would be by himself. He acknowledged he understood all that. He allowed his counsel to be discharged, and his counsel is now off trying another case.[13]

The trial court began discussing the procedure for jury selection. As the venire entered the courtroom, Chappelle stated, "So the motion to appoint new counsel, that's the motion I would like to put forth, but I can't put that motion--."[14] The trial court did not respond and jury selection began.

---

[11] Id. at 23-24.

[12] Id. at 26.

[13] Id. at 26-27.

[14] Id. at 28.

That afternoon, during the direct examination of the State's first witness, Chappelle claimed he had not seen one of the State's exhibits. The trial court immediately recessed the trial until the following day. The deputy prosecutor contacted Gonzales, who reported he had previously provided Chappelle with a redacted copy of discovery. The deputy prosecutor determined that the only documents Chappelle had not been previously provided were transcripts of witness interviews. She provided the King County jail an electronic copy of the witness interviews that evening to give to Chappelle, and provided Chappelle a hard copy the following morning.

Trial continued on November 14, 2012 with no further requests from Chappelle. On November 15, 2012, Chappelle again claimed that he was missing discovery materials, including police reports, medical records and his booking photo. The deputy prosecutor provided Chappelle with additional copies of the materials he requested.

After four days of testimony, the jury found Chappelle guilty of second degree assault but rejected the deadly weapon allegation.

Following his conviction, Chappelle requested court-appointed counsel to file a motion for a new trial. Ramona Brandes of Northwest Defenders Association was assigned to represent Chappelle. Brandes argued that Chappelle was entitled to a new trial because he did not knowingly, intelligently and voluntarily waive his right to counsel and because the State did not timely provide him with discovery so that he could adequately defend himself.

At the hearing on the motion, the State raised the concern that a conflict of interest existed because Gonzales and Brandes were employed by the same public

defense agency and Chappelle had requested to proceed pro se because he did not believe Gonzales was advocating for him effectively. Brandes asserted there was no conflict of interest because Chappelle's motion for a new trial was not based on ineffective assistance of counsel. The trial court asked Chappelle if he was "comfortable going forward this morning with Ms. Brandes . . . even though I'm now told that Ms. Brandes and Mr. Gonzales are in the same firm?"[15] Chappelle replied that he was. The trial court asked again, "If you think there's a conflict, let me know. If not, I'm asking if you waive any conflict that there might be with your current counsel."[16] Chappelle responded, "I don't have any conflicts."[17]

Gonzales appeared at the hearing in response to a subpoena issued by the State. Gonzales told the trial court that he had provided Chappelle a redacted copy of discovery in September 2012. The deputy prosecutor reiterated that on November 14, 2012, she provided Chappelle with transcripts of all interviews with both State and defense witnesses, and on November 15, 2012, following a complaint from Chappelle that he still did not have discovery, she provided him with another full copy of redacted discovery. Chappelle agreed that he had a redacted copy of discovery at the work release facility at which he resided prior to trial, but he had not been permitted to take it with him when he was transferred to the county jail the night before his trial began.

---

[15] RP (Apr. 30, 2013) at 5.

[16] Id. at 6.

[17] Id.

The trial court denied Chappelle's motion. In doing so, the trial court made the following findings:

1.  This court presided over the pretrial motions and trial in this matter.

2.  This court engaged in a lengthy colloquy with the defendant. When the defendant, in the beginning of the colloquy, made an equivocal request to proceed pro se, the court clarified with the defendant the exact nature of his request and he subsequently made repeated and unequivocal requests to proceed pro se.

3.  This court advised the defendant, and the defendant was aware, of the nature of his charges, the standard range and maximum punishment allowed by law. The defendant was also aware that standby counsel would not be afforded and a continuance would not be afforded should the defendant elect to proceed pro se. After such advisement, the defendant unequivocally repeated his desire to proceed to trial pro se and waive his right to counsel.

4.  Despite the defendant's later requests for counsel and for continuances, the defendant's request to proceed pro se was unequivocal and his waiver of the right to counsel was knowingly, intelligently and voluntarily made.

5.  This Court ordered the State to provide discovery to the defendant and the Court is satisfied the State did so. This Court takes judicial notice and finds the defendant did, in fact, have discovery materials in his possession while cross-examining witnesses.[18]

Chappelle appeals.

## DISCUSSION

*Waiver of Right to Counsel*

The constitutional right to proceed without counsel is guaranteed to a criminal defendant by both article I, section 22 of the Washington State Constitution and the Sixth Amendment to the United States Constitution.[19] "This right is so fundamental that

---

[18] Clerk's Papers at 291-92.

[19] State v. Barker, 35 Wn. App. 388, 391-92, 667 P.2d 108 (1983).

it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice."[20] To execute this right, a defendant must affirmatively request to proceed pro se, and the request must be unequivocal when viewed in the context of the record as a whole.[21] Moreover, because a request to proceed pro se involves the waiver of the constitutional right to the assistance of counsel, the request must be made knowingly, voluntarily, and intelligently.[22]

We review the trial court's grant of a motion to proceed pro se for abuse of discretion.[23] A trial court abuses its discretion when its decision is "manifestly unreasonable" or "'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'"[24]

Chappelle claims that he did not knowingly, intelligently and voluntarily waive his right to counsel. He argues that his request to proceed pro se was equivocal because the record showed he did not want to represent himself but instead wanted different court-appointed counsel.

We agree with the trial court that Chappelle's initial statements were equivocal. On October 26, Chappelle asked for different court-appointed counsel. The court denied Chappelle's request because Chappelle had not articulated any grounds for

---

[20] State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010).

[21] State v. Luvene, 127 Wn.2d 690, 698-99, 903 P.2d 960 (1995).

[22] City of Bellevue v. Acrey, 103 Wn.2d 203, 208-09, 691 P.2d 957 (1984).

[23] State v. Breedlove, 79 Wn. App. 101, 106, 900 P.2d 586 (1995).

[24] Madsen, 168 Wn.2d at 504 (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

such a change. On November 13, Chappelle asked to "discharge" counsel and "take my counsel off the case."[25] When the trial court inquired if Chappelle wanted to proceed pro se, Chappelle stated that he did not, and expressed his displeasure that the court on October 26 would not appoint him new counsel.

However, Chappelle persisted in complaining about Gonzales's performance. When the trial court asked again if Chappelle wanted to discharge Gonzales and represent himself, Chappelle said he did. The trial court stated that "if I allow Mr. Gonzales to be discharged, you will be by yourself through the entire case representing yourself."[26] Chappelle stated that he understood. The trial court explained that Chappelle would have to abide by all court rulings, and Chappelle agreed. When Chappelle asked if he could have co-counsel, the court made it very clear that he could not. "You represent yourself, you are up here, you make all your own decisions. You have no lawyer."[27] The trial court properly informed Chappelle of the charge, the standard range, the maximum sentence, and the existence of procedural rules. The trial court concluded, "Finally, is it your desire to be without an attorney in this case?"[28] Chappelle said yes. The trial court then turned to Gonzales and stated that he would be discharged "if [Chappelle's] ultimate decision is unequivocal that he intends to represent himself."[29] The trial court once again addressed Chappelle, stating that he did not

[25] RP (Nov. 13, 2012) at 7, 9.

[26] Id. at 11.

[27] Id. at 13.

[28] Id. at 16.

[29] Id. at 18.

15

recommend that Chappelle proceed pro se but that he was required to allow it as long as Chappelle made the unequivocal decision to do so. The trial court asked Chappelle if that was his decision. Chappelle responded, "That's my decision."[30] We find that this constituted an unequivocal request to proceed pro se and a knowing, intelligent and voluntary waiver of the right to counsel. That Chappelle later renewed his requests for substitution of counsel or co-counsel does not retroactively render his request equivocal.

Relying upon State v. Brittain,[31] Chappelle argues that the trial court's failure to rule on his request for substitution of counsel demonstrates that his waiver was not knowing, intelligent, or voluntary because he was not made aware that "his only choices were continuing the trial with his current attorney or continuing the trial pro se."[32] But in Brittain, the defendant specifically conditioned his waiver of the right to counsel on the outcome of his request for substitution of counsel.[33] Chappelle did not. Furthermore, Chappelle had previously moved for substitution of counsel on October 26, claiming Gonzales had not contacted witnesses critical to his defense. A different judge denied Chappelle's request. Chappelle's subsequent request for substitution of counsel was vague and did not provide the trial court with any legitimate or sufficient grounds.

Chappelle further contends that his waiver was not knowing, intelligent and voluntary because the trial court did not conduct a sufficient colloquy regarding the dangers of self-representation. He argues the trial court did not inquire into his level of

---

[30] Id. at 19.

[31] 38 Wn. App. 740, 689 P.2d 1095 (1984),

[32] Reply Br. at 3.

[33] Brittain, 38 Wn. App. at 742.

education, explain the process for jury selection or making objections, or discuss the elements of the charged crime. But "there are no steadfast rules for determining whether a defendant's waiver of the right to assistance of counsel is validly made."[34] Rather,

> the preferred procedure for determining the validity of a waiver involves the trial court's colloquy with the defendant, conducted on the record. This colloquy should include a discussion about the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of the accused's defense.[35]

The record shows that Chappelle was familiar with the charge, including the deadly weapon allegation, the standard range, and the statutory maximum sentence. Furthermore, the trial court discussed the rules of evidence and criminal procedure with Chappelle, going as far to quiz Chappelle on the definition of "hearsay" and the purpose of a suppression hearing. Finally, the trial court informed Chappelle of the difficulty of proceeding pro se and advised him not to do so. Based on the colloquy, the trial court did not abuse its discretion in finding that Chappelle knowingly, intelligently, and voluntarily waived his right to counsel.

*Materials to Conduct a Defense*

Article I, section 22 of the Washington Constitution "affords a pretrial detainee who has exercised his constitutional right to represent himself a right of reasonable access to state-provided resources that will enable him to prepare a meaningful pro se defense."[36] What measures are necessary or appropriate to constitute reasonable

---

[34] State v. Modica, 136 Wn. App. 434, 441, 149 P.3d 446 (2006).

[35] Id.

[36] State v. Silva, 107 Wn. App. 605, 622, 27 P.3d 663 (2001).

access lies within the sound discretion of the trial court after consideration of all the circumstances.[37]

Chappelle contends that he was denied his constitutional right to present a defense because he lacked the necessary resources to do so as a pro se litigant. Specifically, Chappelle contends that he was not provided discovery in a timely fashion, was not given access to an investigator or a telephone, did not have legal materials such as copies of the relevant court rules or statutes, and was not appointed standby counsel.

Chappelle had been provided a redacted copy of discovery in the months prior to trial. Because he did not have it in his possession at the time he requested to proceed pro se, the State provided him additional copies of the documents he requested, including witness interviews, police reports, medical records and his booking photo. The record shows Chappelle cross-examined all of the State's witnesses and attempted to impeach many of them with their reports or prior statements. In light of the fact that Chappelle requested to proceed pro se on the second day of trial and stated he was not seeking a continuance, Chappelle was provided with reasonable discovery materials with which to conduct his defense.

Chappelle's remaining claims also lack merit. Though Chappelle argues he was denied the services of an investigator, "[t]here is no authority holding that the right of self-representation embodies a right to have an investigator assigned to the

---

[37] Id. at 622-23.

defendant."[38] Furthermore, Chappelle does not explain how his defense was impacted by the lack of a telephone. Despite his incarceration, Chappelle was able to schedule a witness to testify on his behalf. And though Chappelle asserts he had no opportunity to locate any other witnesses, the record is devoid of evidence that other such witnesses existed. Chappelle's claim that he was not provided with any legal materials is similarly unsupported by the record.

Finally, Chappelle contends the trial court erred by not appointing standby counsel to assist him. But there is no absolute right for a pro se defendant to have standby counsel.[39] We review a trial court's refusal to appoint standby counsel for abuse of discretion.[40] Chappelle fails to explain how the trial court abused its discretion in this regard.

*Conflict of Interest*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel which is free from any conflict of interest.[41] But to establish that a conflict of interest deprived him or her of effective assistance of counsel, a defendant must show that an actual conflict adversely affected the attorney's performance in some way.[42] "'[A] mere theoretical division of loyalties'" is insufficient.[43] This court reviews de novo whether circumstances demonstrate a conflict of interest.[44]

---

[38] Id. at 624.

[39] State v. DeWeese, 117 Wn.2d 369, 379, 816 P.2d 1 (1991).

[40] Locks v. Sumner, 703 F.2d 403, 407-08 (9th Cir.1983).

[41] Wood v. Georgia, 450 U.S. 261. 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); State v. Davis, 141 Wn.2d 798, 860, 10 P.3d 977 (2000).

[42] State v. Dhaliwal, 150 Wn.2d 559, 571, 79 P.3d 432 (2003).

Chappelle argues that Gonzales was constitutionally ineffective for failing to provide him with discovery materials when he was discharged. He argues that, because Brandes worked in the same public defense agency as Gonzales, she had a conflict of interest because the relationship prevented her from revealing Mr. Gonzales' ethical violation or using it as the basis for a new trial.

Chappelle does not show that the alleged conflict affected Brandes' performance. Chappelle's claim that Gonzales was constitutionally ineffective is premised on Rule of Professional Conduct 1.16(d), which requires an attorney, upon termination of representation, to turn over "papers and property to which the client is entitled." But to satisfy the test for ineffective assistance of counsel, a defendant must demonstrate both (1) that his attorney's representation was deficient, i.e., that it fell below an objective standard of reasonableness, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[45] Even if Gonzales was ethically bound to provide Chappelle with his client file when the trial court discharged him as counsel, without a showing of prejudice, this failure does not constitute ineffective assistance of counsel.[46] Because Chappelle does not demonstrate that the outcome of the proceeding would have been different

---

[43] Id. at 570 (quoting Mickens v. Taylor, 535 U.S. 162, 171, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002)).

[44] State v. Vicuna, 119 Wn. App. 26, 30-31, 79 P.3d 1 (2003).

[45] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[46] See In re Pers. Restraint of Gomez, 180 Wn.2d 337, 349, 325 P.3d 142 (2014) ("the RPCs do not 'embody the constitutional standard for effective assistance of counsel'") (quoting State v. White, 80 Wn. App. 406, 412-13, 907 P.2d 310 (1995)).

had he been provided with his client file at the time Gonzales left the courtroom, Gonzales was not constitutionally ineffective. Because Gonzales was not ineffective, we cannot infer, as Chappelle urges us to do, that Brandes failed to claim ineffective assistance as a basis for a new trial because of her working relationship with Gonzales.

*Statement of Additional Grounds*

In a pro se statement of additional grounds, Chappelle contends that the trial court violated his constitutional right to counsel of his choice when it denied his request to substitute Gonzales with retained counsel. Where a defendant retains counsel, the Sixth Amendment encompasses the right to counsel of his or her choice.[47] But the right to retain counsel of choice is not unlimited. In considering a motion to substitute retained counsel, "the trial court must weigh the defendant's right to choose his counsel against the public's interest in the prompt and efficient administration of justice."[48] One factor the trial court must consider is whether available counsel is prepared to go to trial.[49] We review a trial court's decision regarding a defendant's motion to substitute retained counsel for abuse of discretion.[50]

Chappelle requested to substitute Gonzales with retained counsel on the second day of trial. Though Chappelle asserted there were attorneys willing to take him as a client, he did not identify any by name nor inform the trial court of their availability. In

---

[47] United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006).

[48] State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010).

[49] State v. Hampton, No. 69601-7-I, slip. op. at 12-13 (Aug. 11, 2014); State v. Price, 126 Wn. App. 617, 632, 109 P.3d 27 (2005).

[50] Price, 126 Wn. App. at 632.

light of these facts, the trial court did not abuse its discretion in denying Chappelle's

request to substitute retained counsel.[51]

Affirmed.

WE CONCUR:

---

[51] Chappelle's remaining claims are adequately addressed in his appellate counsel's brief.