[Nos. 17302-6-II; 17535-5-II;  Division Two.  December 19, 1995.] 18234-3-II.

THE STATE OF WASHINGTON, *Respondent*, v. DIRCK MORGAN WHITE, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. KEON SANG SHIM, *Appellant*.

*In the Matter of the Personal Restraint of* KEON SANG SHIM, *Petitioner*.

*Patricia A. Pethick* and *Andrew T. Stave*, for appellants/ petitioner.

*John W. Ladenburg, Prosecuting Attorney*, and *Thomas C. Roberts, Deputy*, for respondent.

SEINFELD, C.J. — Dirck Morgan White and Keon Sang Shim appeal their convictions of first degree assault. Each claims prejudice arising out of an alleged conflict of interest involving defense counsel below and each challenges the sufficiency of the evidence. White further claims prosecutorial misconduct, ineffective assistance of counsel, and cumulative errors. We affirm.

## FACTS

Brian Allen Tappin was shot in the hip as he and Lester Deamus were preparing to drive away from a convenience store parking lot. This occurred shortly after Tappin and Deamus exited their car and exchanged words with the occupants of a white Camaro. As Tappin turned away, a silver-colored handgun protruded from the Camaro's passenger window. A shot rang out, and a bullet passed through Tappin's arm and lodged in his hip. "Almost simultaneously," the Camaro sped away.

Deamus drove Tappin to the hospital where the two were interviewed by the police. Deamus and Tappin both described the driver of the Camaro as an Hispanic male. Deamus reported that the passenger, an Asian male, had fired the shot. Two hours later, police stopped a white Camaro containing two persons matching the descriptions of the suspects in the shooting and arrested its occupants. White was the driver and Shim was the passenger. Police recovered a silver-colored handgun from under the passenger's seat and a spent bullet casing from the rear seat cushions behind the driver.

The State charged Shim with first degree assault. One week later, an appointed defense attorney (Appointed Counsel) entered a notice of appearance on Shim's behalf.

Appointed Counsel reviewed Shim's file and the police

reports, but did not meet or talk to Shim. He did, however, discuss the case with Shim's stepfather, Jerzy Bilski, and allegedly suggested that Shim should consider a guilty plea. Bilski, unhappy with Appointed Counsel's assessment, hired an attorney to represent his stepson. Eleven days after Appointed Counsel's appearance, the retained attorney filed his notice of appearance. The following week the trial court entered an order allowing Appointed Counsel's withdrawal and the retained attorney's substitution as counsel of record.

Two weeks later the State named White as a codefendant, charging him with rendering criminal assistance in the first degree and, two weeks after that, the same Appointed Counsel filed a notice of appearance on White's behalf. The State later amended the information to add an additional charge of first degree assault against White.

At trial, the State theorized that Shim fired the gun, and that White, as the driver of the car, acted as Shim's accomplice. The codefendants pursued conflicting defenses, each attempting to exculpate himself by inculpating the other.

Neither codefendant brought Appointed Counsel's earlier representation of Shim to the attention of the trial court. In an affidavit filed after trial, Appointed Counsel stated that, although White's police report "seemed familiar," he did not realize he had represented both codefendants in the same matter until it was brought to his attention after judgment.

On appeal, White and Shim both argue that we must reverse their convictions because of Appointed Counsel's undisclosed conflict of interest. White asserts that the conflict denied him his Sixth Amendment right to effective assistance of counsel. Although Shim makes a similar argument in his brief, he acknowledged at oral argument that he sought reversal based solely on Appointed Counsel's breach of the Rules of Professional Conduct.

I

## The Attorney-Client Relationship

Before addressing Appellants' respective claims, we consider whether Shim and Appointed Counsel entered into an attorney-client relationship.

> The existence of an attorney/client relationship is a question of fact, the essence of which may be inferred from the parties' conduct or based upon the client's reasonable subjective belief that such a relationship exists. Even a short consultation may suffice to create an attorney/client relationship, and an important factor in determining the existence of the relationship is the client's subjective belief.

*Teja v. Saran,* 68 Wn. App. 793, 795-96, 846 P.2d 1375, *review denied,* 122 Wn.2d 1008 (1993) (citation omitted).

The factual record regarding this issue is ambiguous. Although Appointed Counsel appeared on behalf of Shim, Shim never met or had any direct communication with Appointed Counsel and never brought the conflict of interest to the attention of his new attorney during the trial. We need not conclusively decide this issue because, even assuming that an attorney-client relationship did exist, Appellants' claims nonetheless fail for the reasons we discuss below.

II

### Effective Assistance of Counsel: White

■■ The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel, free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981); *State v. Myers,* 86 Wn.2d 419, 424, 545 P.2d 538 (1976). We review a challenge to the effective assistance of counsel de novo. *Mannhalt v. Reed,* 847 F.2d 576, 579 (9th Cir.), *cert. denied,* 488 U.S. 908 (1988).

An attorney's conflict of interest may create reversible error in two situations without a showing of actual prejudice. *In re Richardson*, 100 Wn.2d 669, 675 P.2d 209 (1983). First, "reversal is always necessary where a defendant shows an actual conflict of interest adversely affecting his lawyer's performance." *Richardson*, 100 Wn.2d at 677; *see Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). In addition, a trial court commits reversible error if it "knows or reasonably should know of a particular conflict into which it fails to inquire." *Richardson*, 100 Wn.2d at 677; *see Wood*, 450 U.S. 261; *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978). These general rules are applicable to any situation where a defendant alleges ineffectiveness of counsel related to counsel's representation of conflicting interests. *Richardson*, 100 Wn.2d at 677; *see State v. Hatfield*, 51 Wn. App. 408, 410, 754 P.2d 136 (1988). White asserts that both rules apply here.

## A. Actual Conflict of Interest

We engage in the following two-part inquiry to determine whether an actual conflict of interest deprived a defendant of effective assistance of counsel: (1) was there an actual conflict of interest; and (2) if so, did the conflict adversely affect the performance of defendant's attorney?

> [T]he rule in conflict cases is "not quite the per se rule of prejudice that exists for [other] Sixth Amendment claims." *Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). Rather, "[p]rejudice is presumed only if the defendant demonstrates that counsel '*actively* represented conflicting interests' and that 'an actual conflict of interest *adversely affected* his lawyer's performance.'" (Italics ours.) *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 446 U.S. at 348, 350); *see also Richardson*, 100 Wn.2d at 677. . . .

*Hatfield*, 51 Wn. App. at 413.

█ An actual conflict of interest exists when a defense

attorney owes duties to a party whose interests are adverse to those of the defendant. *State v. Byrd*, 30 Wn. App. 794, 798, 638 P.2d 601 (1981). Rule of Professional Conduct (RPC) 1.7(b) prohibits an attorney from representing a client if the attorney's duties to another materially limit that representation.[1]

Although Appointed Counsel may have committed a technical violation of RPC 1.7(b), there is no indication that he "actively" represented conflicting interests. He never directly communicated with Shim, and Shim does not allege that Appointed Counsel was privy to any confidences that could create an active conflict of interest. Appointed Counsel states that it was not until some time after trial that he even remembered that he had appeared for Shim. Thus, there is nothing in the record to support White's allegation that Appointed Counsel's allegiance to him was impaired.

Nor does the record contain any indication that the alleged conflict of interest adversely affected Appointed Counsel's defense of White. White concedes as much in his brief, stating that, but for the ostensible conflict of interest, Appointed Counsel performed satisfactorily.

■ Nonetheless, White contends we must presume an adverse impact from the RPC 1.7(b) violation. White is confusing standards. A RPC 1.7(b) violation may provide grounds for disqualification on the trial level. *See Westerman v. Cary*, 125 Wn.2d 277, 300-01, 885 P.2d 827 (1994), 892 P.2d 1067 (1995). The RPC, however, does not embody

[1]RPC 1.7(b) provides:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents in writing after consultation and a full disclosure of the material facts (following authorization from the other client to make such a disclosure). When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

the constitutional standard for effective assistance of counsel on appeal.

Lacking any evidence in the record that Appointed Counsel's appearance for Shim impaired his defense of White, we will not presume prejudice.

### B. The Trial Court's Failure To Inquire

White contends the trial court reasonably should have known about Appointed Counsel's conflict of interest from the court file. In particular, he argues that Shim's severance motion and Appointed Counsel's notice of appearance should have alerted the trial court to the potential conflict. Accordingly, he argues that the trial court's failure to inquire about the conflict jeopardized his right to effective counsel and warrants reversal of his conviction.

■ The trial court has a duty to inquire into a potential conflict of interest only if there are "special circumstances" such that "the trial court knows or reasonably should know that a particular conflict exists." *State v. Martinez*, 53 Wn. App. 709, 715, 770 P.2d 646, *review denied*, 112 Wn.2d 1026 (1989) (quoting *Cuyler*, 446 U.S. at 346-47). Here, the severance motion merely indicates Shim's belief that White intended to inculpate him at trial. It contains nothing about Appointed Counsel's prior representation of Shim. Although Appointed Counsel's separate notices of appearance on behalf of White and Shim provide evidence that there was a potential conflict of interest, it is not reasonable to require a trial court to scrutinize every document in a case file to detect potential ethical breaches to which neither party has objected. *See State v. Lingo*, 32 Wn. App. 638, 645-46, 649 P.2d 130, *review denied*, 98 Wn.2d 1005 (1982).

This case is distinguishable from *Richardson*, in which a defense witness indicated in open court that defense counsel had previously represented him. Even after this conflict became apparent, the *Richardson* trial court failed to inquire into the potential conflict. *Richardson*, 100

Wn.2d at 678. The Supreme Court remanded the matter for further fact finding, stating: "[t]he possibility of the [conflict of interest] was brought home to the court, but instead of jealously guarding [Mr. Richardson's] rights, the court may fairly be said to be responsible for creating a situation which resulted in the impairment of those rights." *Richardson*, 100 Wn.2d at 678 (quoting *Glasser v. United States*, 315 U.S. 60, 71, 62 S. Ct. 457, 465, 86 L. Ed. 680 (1942)).

Here, there are no such special circumstances. Appointed Counsel did not jointly represent the codefendants. In fact, his appearance and withdrawal as Shim's attorney occurred before the State charged White as a codefendant. Nothing in the record suggests that Appointed Counsel personally appeared before the trial court on Shim's behalf. As the trial court could not reasonably have known that Appointed Counsel had a potential conflict of interest, it was under no obligation to inquire further.

### III
### BREACH OF RPC 1.9: SHIM

Shim argues that we should presume prejudice and reverse his conviction because of Appointed Counsel's violation of the Rules of Professional Conduct. Shim correctly notes that had the trial court known of Appointed Counsel's ethical breach, it would have been required to presume prejudice and automatically disqualify Appointed Counsel. *See State v. Hunsaker*, 74 Wn. App. 38, 43, 873 P.2d 540 (1994) (reviewing court presumes prejudice per se in an interlocutory appeal from a trial court ruling) (quoting *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953)). Shim contends that a similar presumption of prejudice should apply on appeal after entry of final judgment.

RPC 1.9 provides in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts[.]

This prohibition against "side-switching" incorporates two ethical obligations: the duty of confidentiality and the duty of loyalty. *Teja*, 68 Wn. App. at 798-99.

Appointed Counsel may have violated RPC 1.9(a) by appearing for Shim, withdrawing, and then representing Shim's codefendant, White, in the same proceeding, without consulting with or disclosing the potential conflict to Shim or seeking Shim's written consent. RPC 1.9(a) requires the automatic disqualification of a trial attorney who violates the rule. *State v. Stenger*, 111 Wn.2d 516, 520-21, 760 P.2d 357 (1988); *Teja*, 68 Wn. App. at 799-800.

The rule's presumption of prejudice makes it unnecessary for the former client to prove that the attorney divulged actual confidences. *Teja*, 68 Wn. App. at 800. It thereby preserves the attorney-client relationship by eliminating the need for the trial court to inquire into those client's confidences. *Teja*, 68 Wn. App. at 799.

When this matter is first raised after judgment, however, the former client must show that the attorney's breach of the Rules of Professional Conduct prejudiced his interests. *First Small Business Inv. Co. v. Intercapital Corp.*, 108 Wn.2d 324, 331-32, 738 P.2d 263 (1987); *Teja*, 68 Wn. App. at 800-01; *see People v. Moore*, 30 A.D.2d 720, 291 N.Y.S.2d 706, 708 (1968) (where District Attorney was unaware that he had previously represented petitioner until after the trial court denied petitioner's requested relief, petitioner not entitled to reversal absent a showing of prejudice). If we were to presume prejudice on appeal, a defendant would have no incentive to bring a potential conflict situation to the attention of the trial court so that the trial court could take corrective measures. Instead, the incentive would be to save this issue for appeal in case of an unfavorable judgment. Such an outcome is contrary

to judicial ideals of efficiency, fairness, and finality of judgment.

As Shim is raising the conflict of interest issue for the first time on appeal, he must show that Appointed Counsel's violation of RPC 1.9 prejudiced him. Shim concedes that there is no such evidence. Thus, Appointed Counsel's actions do not warrant reversal.

In summary, we decline to presume prejudice under these facts, and neither Shim nor White has shown actual prejudice. Nor has White shown that Appointed Counsel's undisclosed conflict violated his Sixth Amendment right to counsel. Thus, we affirm.

A majority of the panel have determined that this portion of the opinion will be printed in the Washington Appellate Reports. The remainder of this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040.

BRIDGEWATER and FLEISHER, JJ., concur.

Review denied at 129 Wn.2d 1012 (1996).