# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72619-6-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | |
| STEVEN COOK, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: November 9, 2015 |

SPEARMAN, C.J. — Steven Cook, a licensed massage therapist, was convicted of taking indecent liberties with a patient. He appeals, claiming that the prosecutor committed reversible error by misstating the burden of proof and that he received ineffective assistance of counsel because his attorney failed to object to the prosecutor's misstatement. In a statement of additional grounds, Cook asserts that the State conducted a faulty investigation by failing to promptly collect deoxyribonucleic acid (DNA) evidence and raises several claims related to this allegedly faulty investigation. Finding no error, we affirm.

## FACTS

Cook became licensed as a massage therapist in December 2013 and shortly thereafter obtained employment at a chiropractic clinic. In June 2014, N.R. began receiving massage therapy from Cook as part of her treatment for

injuries sustained in a car accident. She received four massages from Cook without incident.

N.R. received a fifth massage from Cook on July 6, 2014. N.R. stated that during this appointment, Cook pressed on her lower back with one hand so that she could not get up. She stated that Cook massaged her genitals with his other hand, tried to kiss that area, and repeatedly inserted a finger into her vagina.

N.R. reported the incident to the police on July 8, 2014. On July 10, 2014, N.R. met with the detective assigned to the case and received a sexual assault examination from a forensic nurse examiner. As part of the exam, the nurse took swabs of N.R.'s vagina. On July 15, 2014, the investigating detective and her partner interviewed Cook. Cook stated that he accidently touched N.R.'s vagina during the massage.

Cook was arrested and charged with second degree rape and indecent liberties. At trial, the detective testified that she did not test the swabs from N.R.'s sexual assault examination for DNA evidence. She stated that she decided not to test the swabs based on the low probability of obtaining DNA evidence. Additionally, the presence of Cook's DNA, if obtained, would be consistent with his statement that he had accidentally touched N.R.'s vagina.

The forensic nurse testified regarding the sexual assault examination. She stated that it is standard practice to take swabs during a sexual assault examination if the exam occurs within seven days of the alleged assault. The swabs are used to test for sexually transmitted diseases and may be used to obtain DNA evidence. The nurse described finding DNA evidence from digital

penetration as "not highly likely, but it is likely." 3VRP (Sept. 23, 2014) at 210. In N.R.'s case, when the exam took place four days after the alleged assault, she described it as "possible" that there could be DNA evidence. Id. at 210. She later described finding DNA evidence on N.R.'s swabs as a "slim possibility." Id. 218-219.

During closing arguments, defense counsel emphasized the State's burden of proof. She argued that the State had the duty to present evidence and that it had failed in that duty by not testing the swabs. On rebuttal, the prosecutor took issue with defense counsel's characterization of the burden of proof and read the pattern jury instruction aloud.

The jury acquitted Cook of the rape charge but convicted him of indecent liberties. He appeals, claiming that the prosecutor distorted and diminished the burden of proof in closing argument and that his counsel was ineffective in failing to object to the prosecutor's misstatement.

## DISCUSSION

To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was "'both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). A prosecutor is "entitled to make a fair response to the arguments of defense counsel" during rebuttal. State v. Brown, 132 Wn.2d 529, 566, 940 P.2d 546 (1997). A prosecutor's comments are generally only prejudicial if there is a "'substantial likelihood the misconduct affected the jury's

3

verdict.'" State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting

State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007)). If the defendant did

not object to alleged misconduct at trial, the issue of prosecutorial misconduct is

waived unless the misconduct was flagrant, ill intentioned, and could not have

been cured by an admonition to the jury. State v. Weber, 159 Wn.2d 252, 270,

149 P.3d 646 (2006) (citing State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d

1239 (1997)).

Cook asserts that the prosecutor misstated the burden of proof. He argues

that the prosecutor's discussion of "a reason to doubt" minimized the State's

burden. Brief of Appellant at 9. He further argues that the prosecutor suggested

that the reasonable doubt standard was something different from "abiding belief."

Id. The State argues that, in the context of the entire closing argument, the

prosecutor's statement was not error. Alternatively, if it was error, it was waived

because any prejudicial effect could have been cured by a timely objection.

The "reason to doubt" language that Cook objects to first appeared in

defense counsel's closing argument. Defense counsel emphasized the State's

burden, stating:

> I want to take a moment and talk about this burden that the
> State has because it's incredibly important. It's the crux of what
> you're dealing with. Because when the State charges a person
> with a crime, ...[t]hey have to bring all their resources, their
> money, their power, everything they have at their disposal and
> put it out here as evidence for you to hear. . . .

4VRP (Sept. 24, 2014) at 30-31. After describing lower burdens of proof,

she stated:

4

> The State's burden here is higher than that. And it's higher than that for a reason, and it's a bit of an intelligent twist because you may think he's guilty by clear, cogent, and convincing evidence. **But if you have reason to doubt the State hasn't proven to you beyond a reasonable doubt that he's guilty,** you have to acquit him.

Id. at 32 (emphasis added). She then reminded the jury that the State had not provided any corroborating evidence:

> I want to talk a little bit about [N.R.'s] stories and the problems with the stories. I can't emphasize enough to go back to the fact there is not one additional piece of evidence to corroborate what she has said. The State's evidence is based entirely on that . . . .

Id. at 33. Defense counsel argued that the swabs should have been tested for DNA, and that the State did not meet its burden by failing to test the swabs:

> The DNA, if swabs were taken --and my listening of the testimony was that it was likely or possible that there was DNA on those swabs if it had been tested.
>
> . . .
>
> So the swabs that were taken from inside of her vagina showed his DNA. That would have been evidence the State has -- did not get tested and did not put before you. That's their burden, their duty to do that. That's lacking – that's evidence that's not here.

Id. at 35-36

On rebuttal, the prosecutor took issue with defense counsel's use of the phrase "reason to doubt." He argued:

> Of course, there are many standards of proof, but there's one thing that I take issue with and the instructions do. **Beyond a reasonable doubt is not a reason to doubt**. The instructions define it a little differently. It's not a reason to doubt. It says what beyond a reasonable doubt is also: an abiding belief in the truth of the charges. That's your standard.

<u>Id.</u> at 44 (emphasis added). The prosecutor then read the jury instruction out loud:

> The law simply requires, "A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt" --and these are to an element of the offense – "as would exist in the mind of a reasonable person after fully, carefully -- fairly, and carefully considering all of the evidence or lack of evidence. But if you have -- if, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt."

<u>Id.</u> at 45. The prosecutor also rebutted the suggestion that the State's decision not to test the swabs was the basis for a reasonable doubt about Cook's guilt:

> So it's not a reason to doubt. Gee, I guess there was a small chance that the DNA could have been recovered on the swab that was also used to test whether she had any sexually transmitted diseases. It's not a doubt to an element of the offense. It's not a reasonable doubt. It may be for you, but that's for your determination.

<u>Id.</u>

Considering the entire context, Cook has not shown that the prosecutor undermined the State's burden of proof. Cook does not dispute that the jury received the proper written instruction. The prosecutor did not replace the instruction with his own paraphrase, but drew the jury's attention to the pattern instruction by reading it out loud. The prosecutor did not, as Cook argues, suggest that the reasonable doubt standard was different than "abiding belief," but emphasized that "an abiding belief in the truth of the charges" was part of the pattern instruction. 4VRP (Sept. 24, 2014) at 44. Considering the prosecutor's statements in context, we find no error.

6

Cook next argues that he received ineffective assistance of counsel because his attorney failed to object to the prosecutor's misstatement of the burden of proof. We review an ineffective assistance of counsel claim de novo. State v. White, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance "fell below an objective standard of reasonableness and (2) there was prejudice, measured as a reasonable probability that the result of the proceeding would have been different." State v. Humphries, 181 Wn.2d 708, 719-720, 336 P.3d 1121 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Because Cook has not shown that the prosecutor's argument was error, he has failed to show that counsel's performance was deficient in failing to object to that argument. We accordingly reject Cook's ineffective assistance of counsel claim.

Statement of Additional Grounds

In a statement of additional grounds (SAG), Cook repeatedly argues that the State conducted a faulty investigation by failing to promptly obtain DNA evidence.[1] He appears to raise three claims based on the allegedly faulty investigation: (1) that the prosecutor committed misconduct by misleading the jury about the lack of DNA evidence; (2) that he received ineffective assistance of counsel because his attorney did not have the swabs tested and did not

---

[1] Cook's SAG is inconsistently numbered. The gist of his arguments can be found in the statement of cases immediately following his resume.

adequately challenge the State's evidence; and (3) that the State suppressed exculpatory evidence. His claims are without merit.

First, Cook argues that the prosecutor's closing argument was improper. He objects to the manner in which the prosecutor summarized testimony and to the prosecutor's arguments concerning the lack of DNA evidence. Considering the prosecutor's statements in context, we find no error.

Second, Cook claims that he received ineffective assistance of counsel. Cook argues that his attorney's performance was deficient because she did not test the swabs for DNA evidence. But the merits of this argument depend on whether the results of such a test would be helpful to Cook's defense. Because any such evidence is outside the record before us, we decline to review the claim on appeal.

Cook also argues that he received ineffective assistance of counsel because his attorney should have challenged the State witnesses about alleged inconsistences in their testimony and should have argued to the jury that the lack of DNA evidence indicated his innocence. The record reflects that counsel did challenge State witnesses and did urge the jury to consider both the alleged inconsistences in testimony and the lack of evidence corroborating N.R.'s testimony. In addition, the jury acquitted Cook of the most serious charge, second degree rape. We accordingly hold that Cook has not shown that counsel's performance was deficient.

Finally, Cook appears to argue that, by failing to obtain DNA evidence, the State unlawfully suppressed evidence. Under Brady v. Maryland, 373 U.S. 83, 83

S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State has a constitutional duty to disclose exculpatory evidence. To establish a Brady violation, a defendant must demonstrate that (1) the evidence at issue is favorable to the accused; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) prejudice resulted. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). But because there is no evidence in the record of whether the swabs contained evidence favorable to Cook or that the State suppressed the evidence, we are unable to review this claim.

Affirmed.

WE CONCUR: