# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73517-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL ZIELINSKI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 3, 2016 |

SPEARMAN, J. — To succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness and (2) there was a reasonable probability that but for the deficient performance, the outcome of the proceeding would have been different. If the defendant cannot prove both prongs, the claim fails. Here, appellant Michael Zielinski was convicted of multiple counts of child rape. He claims that as a result of his lawyer's failure to object to certain hearsay evidence, the lawyer's representation was ineffective. But even if the failure to object constituted a deficient performance, Zielinski cannot show that but for the error, the outcome of the proceeding would have been different. We affirm.

## FACTS

Michael Zielinski married Annette Griffith and had three children: two sons and a daughter, A.G., who was born July 2, 1996. RP 228. They all lived together

in a home in Des Moines, Washington. Zielinski and Griffith's marriage began deteriorating and in March of 2009, Griffith and the children moved out of the family home into her parent's house in Federal Way. Griffith stored most of the family's belongings in the garage. In June 2012, Griffith and A.G. discussed her old bed from the Des Moines home that had been in storage. A.G. told her mother that she "didn't want anything to do with [her] bed." Verbatim Report of Proceedings (VRP) at 494. She did not tell her mother why. Later, in February 2013, A.G. admitted to her mother's fiancée that Zielinski had touched her inappropriately. She eventually disclosed that Zielinski had sexually assaulted her three to four nights per week from 2001 to 2009. The sexual assaults took place in A.G.'s bed.

Zielinski was charged with three counts of first degree child rape–domestic violence, and one count of second degree child rape–domestic violence. At trial, A.G. testified that she was in kindergarten when her father started molesting her. He touched her inappropriately on a regular basis and gradually progressed from the outside to the inside of her clothing. A.G. testified that she was in third grade when her father first raped her. She remembers it being very painful, and she whimpered and bit into a pillow to stay quiet. A.G. also testified about steps she took to hide the abuse; like doing her own laundry and cleaning blood from her mattress.

When asked at trial why she had not reported the abuse sooner, A.G. testified that she first assumed it was normal father-daughter behavior. When she began to question it, she remained silent because she was afraid no one would

2

believe her, or that her father would follow through with threats to hurt her or other family members if she said anything. RP 414, 443, 451, 461, 479.

When A.G.'s mother testified at trial, the prosecutor questioned her regarding her conversation about A.G.'s bed that had been in storage:

> [Prosecutor:] Okay, so when you were preparing to move you and [J.Z.] and [A.G.] to the house in Burien, was there a discussion that you had with [A.G.] about some of the items in the house?
>
> [Griffith:] Yes. I was trying -- you know, I was -- we were kind of excited to be out on our own again, and so I called her. I said, "Hey, you are going to be able to use your bed set again," because it had just been in storage, and she said, "I don't want anything to do with that bed." And I said, "Do you want to talk about it?" And she said, "No, I'm not ready." And this was on a phone call. And so I let it go.
>
> [Prosecutor:] And did that strike you as odd or unusual at the time?
>
> [Griffith:] It made me sad because I jump to conclusions and I realized she's -- she is carrying a burden that she wasn't ready to talk to me about.

VRP at 269-70. There was no defense objection to A.G.'s hearsay. Shortly thereafter, the following exchange occurred:

> [Prosecutor]. Okay, now you were talking with her on the phone; without saying what specifically she said, how would you describe her demeanor or her tone when you were talking about this bed set?
>
> [Griffith]. Just very short. No explanation, she just said, "I don't want anything to do with that bed."
>
> [Defense Counsel]: Objection, hearsay, move to strike.

VRP at 272. The trial court sustained defense counsel's objection and struck the statement. Later at trial, A.G. testified that upon seeing the bed, "I told my mom I

didn't want anything to do with my bed." VRP at 494. Following trial, the jury found Zielinski guilty as charged. Zielinski appeals.

## DISCUSSION

We review an ineffective assistance of counsel claim de novo. State v. White, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). The defendant has the burden of establishing ineffective assistance of counsel. State v. Humphries, 181 Wn.2d 708, 719-720, 336 P.3d 1121 (2014). To prevail, a defendant must show that (1) counsel's performance "fell below an objective standard of reasonableness and (2) there was prejudice, measured as a reasonable probability that the result of the proceeding would have been different." Humphries, 181 Wn.2d at 720 (citing Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Judicial review of an attorney's performance is highly deferential. Strickland, 466 U.S. at 689. The performance of an attorney "is not deficient if it can be considered a legitimate trial tactic." Humphries, 181 Wn.2d at 720 (citing State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)).

Zielinski asserts that he received ineffective assistance of counsel because his attorney failed to object to an instance of hearsay in Griffith's testimony, and this prejudiced the outcome of trial. The claim fails because even if defense counsel's failure to object was deficient, Zielinski cannot show a reasonable probability that the error affected the outcome of trial.

Zielinski argues that because the trial hinged on A.G.'s credibility, any evidence tending to corroborate A.G.'s testimony could have changed the

4

outcome of trial. While Griffith's hearsay statement tended to corroborate A.G.'s testimony that she didn't "want anything to do with [her] bed," Zielinski's argument that the testimony on that issue tipped the balance on the jury's assessment of A.G.'s credibility is unpersuasive. The issue was tangential to whether Zielinski committed the alleged crimes against A.G., so much so that the subject was not mentioned by either party in closing statements. A.G. testified at length about the alleged crimes and was subject to cross-examination. The jury had ample opportunity to weigh her testimony and assess her credibility. On the record before us, we cannot conclude that there is a reasonable probability that the outcome of trial would have been different had defense counsel objected to Griffith's hearsay.

## Costs on Appeal

Zielinski argues that we should not impose appeal costs against him because he is indigent. The State does not request costs in its response brief.

Appellate courts may require an adult offender convicted of an offense to pay appellate costs. RCW 10.73.160(1). The commissioner or clerk will award costs to the State if the State is the substantially prevailing party on appeal, "unless the appellate court directs otherwise in its decision terminating review." RAP 14.2. A determination of a criminal defendant's indigency is entrusted to the trial judge whose finding of indigency we respect unless we are shown good cause not to do so. State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 review denied, 185 Wn.2d 1034, 377 P.3d 733 (2016). We "give a party the benefits of an order of indigency throughout the review unless the trial court finds

5

the party's financial condition has improved to the extent that the party is no longer indigent." RAP 15.2(f).

The trial court issued an order finding Zielinski indigent and authorizing him to appeal in forma pauperis. The trial court has not found that his financial condition has improved or is likely to improve. We therefore presume that Zielinski remains indigent. He is 49 years old. His sentence is 25 years, after which he will be required to register as a sex offender, submit to community supervision, and pay fees for community supervision. It is unlikely that his financial condition will improve. Under these circumstances, we conclude that an award to the State of appellate costs is not appropriate.

Affirmed.

_Spearman, J._

WE CONCUR:

_____

_Becker, J._