IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39675-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT ALEXANDER CLARK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Robert Clark was charged with second degree assault after an altercation occurred between him and another inmate at the Asotin County Jail. Mr. Clark claimed self-defense at trial. The jury ultimately found Mr. Clark guilty, and he was later sentenced. Mr. Clark appeals, asserting his trial attorney was ineffective for failing to request the court instruct the jury that he had no duty to retreat, and the court erred in ordering the victim penalty assessment (VPA). Because Mr. Clark is unable to demonstrate prejudice, we affirm his conviction. We remand for the limited purpose of striking the VPA.

BACKGROUND

Jail inmates Mr. Clark and Trevor Lunney got into a physical altercation on February 2, 2021. Prior to the altercation, Mr. Lunney informed jail staff that Mr. Clark had been making a form of homemade alcohol in his cell, leading to disciplinary action for Mr. Clark. Jail staff also discovered a razor blade and a nail in Mr. Lunney's cell, leading to his discipline. Mr. Lunney believed Mr. Clark was given a bag of coffee in exchange for assisting with the search of his cell.

The jail permits inmates to be out of their cells periodically, allowing time to walk the hallways and use the dayroom. Cell doors are unlocked during this time, but the doors will automatically lock if closed. When a cell door closes during out-time, the inmate within the cell has to kick the door to alert jail staff to open the door.

Mr. Lunney entered his cell during out-time on the day of the altercation and closed the door behind him but left the door sufficiently ajar to prevent it from automatically locking. Another inmate approached Mr. Lunney's cell and pushed the door closed, leaving Mr. Lunney locked inside. Mr. Lunney believed Mr. Clark was involved and complained to jail staff about Mr. Clark's conduct.

Once released from his cell, Mr. Lunney went to the dayroom to write an e-mail at a kiosk. The dayroom is equipped with video recording equipment that captured the altercation between Mr. Lunney and Mr. Clark. As Mr. Lunney sat in front of the kiosk, Mr. Clark entered the dayroom, approached Mr. Lunney and began making comments

and gestures toward Mr. Lunney while standing between Mr. Lunney and the door. Mr. Lunney stood up in response and approached Mr. Clark with his hands at his side and palms exposed.

The two conversed momentarily before Mr. Clark suddenly pushed Mr. Lunney with both hands, causing Mr. Lunney to fall backward. Once Mr. Lunney recovered from the shove, he and Mr. Clark moved toward one another. Mr. Clark then punched Mr. Lunney in the jaw and repeatedly punched him about the head. Mr. Clark next pushed Mr. Lunney into the wall and kneed him in the head, causing Mr. Lunney to collapse to the floor. Once on the floor, Mr. Clark delivered five more strikes to Mr. Lunney's head with his fists. Mr. Clark stopped striking Mr. Lunney when jail staff entered the dayroom. Mr. Lunney was left motionless on the floor. Mr. Lunney was concussed and required medical intervention to close the lacerations to his head and lip.

A deputy questioned Mr. Clark after the altercation. Mr. Clark reported to the deputy that "[Mr. Lunney] went to grab ahold of me." Rep. of Proc. (RP) at 520. He claimed that Mr. Lunney "just kept coming after me, so it escalated fast." RP at 520. Mr. Clark also told the deputy that Mr. Lunney "kept getting in my face and I was like, you know, don't be so fucking close to me and all that, but he reached up to grab me or something and I pushed him away." RP at 522. Mr. Clark conveyed that "[i]t just escalated really fast from there." RP at 522. Mr. Clark never reported that he was

3

defending himself, was concerned about threats made against him, or that he believed

Mr. Lunney was a danger to him. Mr. Clark's recorded interview was played to the jury.

At trial, Mr. Clark testified that Mr. Lunney had made it known that he wanted to

fight and was aware Mr. Lunney possessed a razor blade. Mr. Clark testified the

conversation between he and Mr. Lunney in the dayroom concerned Mr. Clark's denial of

closing the cell door, Mr. Lunney's attitude, and Mr. Lunney's domination of the kiosk,

among other subjects. Mr. Clark testified that he told Mr. Lunney his attitude was going

to lead to a fight, and Mr. Lunney responded, "'Yeah, that's what I want, let's fucking do

it.'" RP at 689. Mr. Clark stated he felt threatened as Mr. Lunney continued to move

closer. He claimed he pushed Mr. Lunney to make space.

During the cross-examination of Mr. Clark, the prosecutor asked, "At that point,

you could have retreated from the—from the cell; correct?" RP at 703. Mr. Clark

responded in the affirmative. During summation, the prosecutor argued:

> Mr. Lunney did not want to fight Mr. Clark. He put his hands
> out to the side, he turned, he tried to—Mr. Clark could have turned
> around and walked out of that room at any time. He never had to
> follow Mr. Lunney into that room.

RP at 809.

The jury found Mr. Clark guilty of assault in the second degree. The court ordered

the VPA despite finding Mr. Clark indigent for purposes of an appeal and waiving

interest on his restitution.

Mr. Clark timely appeals.

4

ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Clark argues his trial attorney was ineffective for failing to request the court instruct the jury that he had no duty to retreat. We disagree.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

In asserting ineffective assistance of counsel, an appellant bears the burden of demonstrating that his attorney's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, there is a reasonable probability that but for his attorney's poor performance the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The burden is on

a defendant alleging ineffective assistance of counsel to show deficient representation.

*Id*. The reasonableness of counsel's performance is to be evaluated from the attorney's

perspective at the time of the alleged error and in consideration of all the circumstances.

*Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).

"When counsel's conduct can be characterized as legitimate trial strategy or tactics,

performance is not deficient." *Kyllo*, 166 Wn.2d at 863. A sufficient basis to rebut

legitimate trial strategy exists when the defendant demonstrates there is "no conceivable

legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d

126, 130, 101 P.3d 80 (2004).

A defendant must also affirmatively prove prejudice, not simply show that "the

errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S.

668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant establishes prejudice by

demonstrating that the proceedings would have been different but for counsel's deficient

representation. *McFarland*, 127 Wn.2d at 337.

To prevail on a claim of ineffective assistance of counsel based on trial counsel's

failure to request a specific jury instruction, the appellant must show he was entitled to

the instruction, his attorney was deficient in not requesting the instruction, and not

requesting the instruction resulted in prejudice. *State v. Thompson*, 169 Wn. App. 436,

495, 290 P.3d 996 (2012). In assessing whether the evidence was sufficient to support

entitlement to a specific instruction, this court views the evidence in a light most

6

favorable to the party requesting the instruction. *State v. Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020).

Defense counsel failed to request the trial court instruct the jury that Mr. Clark had no duty to retreat. The no duty to retreat instruction provides:

> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force.

> Notwithstanding the requirement that lawful force "not more than necessary," the law does not impose a duty to retreat. Retreat should not be considered by you as a "reasonably effective alternative."

11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.05 (5th ed.). A defendant is entitled to a no duty to retreat instruction when sufficient evidence is presented to support it, namely, when "a jury may objectively conclude that flight is a reasonably effective alternative to the use of force in self-defense." *State v. Redmond*, 150 Wn.2d 489, 495, 78 P.3d 1001 (2003).

Here, the prosecutor asked whether Mr. Clark could have retreated from the dayroom. Mr. Clark responded in the affirmative. Then, during summation, the prosecutor argued, "Mr. Clark could have turned around and walked out of that room at any time." RP at 809. Based on the State's question and closing argument, the jury could have objectively considered Mr. Clark's opportunity to retreat as a reasonably effective alternative to engaging Mr. Lunney. In viewing the evidence in a light most favorable to Mr. Clark, he was entitled to the instruction.

The trial court would have likely instructed the jury that Mr. Clark had no duty to retreat had the request for the instruction been made. The instruction was necessary to rebut the State's assertion that retreat was a reasonably available alternative for Mr. Clark. There is no conceivable legitimate basis for defense counsel's failure to request the instruction as an enhanced the self-defense instruction and corrected the State's argument that retreat was a reasonably effective alternative. Defense counsel was ineffective in failing to request the jury be instructed that Mr. Clark had no duty to retreat.

Although defense counsel was ineffective in failing to request the instruction, Mr. Clark has failed to demonstrate he was prejudiced by his attorney's deficiency. Specifically, Mr. Clark has failed to establish that his use of force was not more than was necessary, a component of the self-defense instruction and no duty to retreat instruction.

The court instructed the jury on self-defense, in part instructing:

> The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and *when the force is not more than is necessary*.

> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

CP at 42 (emphasis added). The court instructed the jury on the definition of "necessary:"

8

> Necessary means that, under the circumstances as they reasonably appeared to the actor at the time, (1) no reasonably effective alternative to the use of force appeared to exist and (2) the amount of force used *was reasonable* to effect the lawful purpose intended.

CP at 43 (emphasis added).

Even if the jury were instructed that Mr. Clark had no duty to retreat, the significant physical force exhibited by Mr. Clark was not reasonable. Mr. Clark testified that when he approached Mr. Lunney in the dayroom, he "thought about [Mr. Lunney's] constant remarks and boasting about always having weapons." RP at 691. However, Mr. Clark never expressed a belief to the deputy that Mr. Lunney was in possession of a weapon when the fight occurred. Further, the video recording unequivocally shows Mr. Clark was first to initiate contact while Mr. Lunney's hands were empty and his palms visible. Absent the presence of a weapon or the initiation of physical contact by Mr. Lunney, Mr. Clark's actions left Mr. Lunney motionless on the dayroom floor with a concussion and two lacerations that required medical intervention.

Based on Mr. Clark unequivocally initiating physical contact with an unarmed Mr. Lunney and the unreasonable amount of force Mr. Clark employed against him, Mr. Clark has failed to affirmatively demonstrate that the proceedings would have been different but for his trial attorney's failure to request a no duty to retreat instruction. Although Mr. Clark was afforded ineffective assistance from his trial attorney, Mr. Clark has failed to establish prejudice.

9

VICTIM PENALTY ASSESSMENT

Mr. Clark argues the trial court erred when it imposed the VPA. We agree and remand for the court to strike the VPA from the judgment and sentence.

Former RCW 7.68.035(1)(a) (2018) required a VPA be imposed on any individual found guilty of a crime in superior court. In April 2023, the legislature passed Engrossed Substitute H.B. 1169 (H.B. 1169), 68th Leg., Reg. Sess. (Wash. 2023), effective July 1, 2023, that amended RCW 7.68.035 to prohibit the imposition of the VPA on indigent defendants. RCW 7.68.035. Amendments to statutes that impose costs on convictions apply prospectively to cases pending on appeal. *State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Review of the trial court's inquiry into a defendant's financial status is de novo. *Id.* at 741-42. The record must reflect that the trial court made an individualized inquiry into a defendant's current and future ability to pay prior to assessing discretionary legal financial obligations. *State v. Blazina*, 182 Wn.2d 827, 837-39, 344 P.3d 680 (2015).

Mr. Clark argues he was indigent at the time of sentencing and requests we remand for the trial court to strike the VPA from his judgment and sentence. He contends the trial court's finding of indigency is evidenced by its waiver of the interest on restitution and by his motion and certificate for an order of indigency.

The State responds that the record is void of any inquiry into Mr. Clark's ability to pay at the time of sentencing. The State contends that RCW 10.01.160(3) requires the

sentencing judge to make an individualized inquiry into the defendant's current and future ability to pay before imposing legal financial obligations.  When the record lacks a factual inquiry, the State asserts the remedy is to remand for the trial court to make an indigency determination.  *State v. Ellis*, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023), *review granted*, 4 Wn.3d 1009, 564 P.3d 547 (2025).

In *Ramirez*, our Supreme Court examined whether the trial court had conducted an adequate inquiry into Mr. Ramirez's ability to pay before assessing legal financial obligations.  There, the trial court failed to conduct an adequate inquiry.  191 Wn.2d at 743.  The Supreme Court held that the financial section of Mr. Ramirez's motion for an order of indigency "would have provided a reliable framework for the individualized inquiry that *Blazina* and RCW 10.01.160(3) require."  *Id.* at 744; *See also Blazina*, 182 Wn.2d at 838-39.

During sentencing, Mr. Clark moved the trial court for an order finding him indigent.  In it, Mr. Clark claimed he was found indigent by a court in 2021 and that there has been no change in his financial status since that time.  In addition to considering Mr. Clark's motion, the court also recognized that Mr. Clark had been sentenced to 200 months on another case.  Thus, the court granted Mr. Clark appellate counsel at public expense, ordered the costs associated with the appeal be at public expense, and waived interest on his restitution.  We deem sufficient the court's inquiry into Mr. Clark's current and future ability to pay legal financial obligations.

No. 39675-4-III
*State v. Clark*

Because Mr. Clark was indigent at the time of sentencing, we remand for the VPA

to be struck from the judgment and sentence.

CONCLUSION

We affirm Mr. Clark's conviction and remand for the limited purpose of striking

the VPA.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Cooney, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Fearing, J.

12