**FILED**
**MAY 21, 2026**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40539-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RODERICK JEROME THOMAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, A.C.J. — A jury found Roderick Thomas guilty of felony violation of a no contact order. Mr. Thomas appeals, arguing his trial counsel was ineffective in failing to object to (1) inadmissible hearsay, (2) testimony that violated the best evidence rule, (3) admission of unauthenticated recordings, and (4) improper opinion testimony. Because Mr. Thomas has not shown that his trial attorney lacked any legitimate tactical reason in not objecting, we affirm.

## BACKGROUND

On January 16, 2024, the superior court entered a domestic violence no contact order that prohibited Mr. Thomas from contacting A.H. On February 3, 2024, while the

order was in effect, A.H. received Facebook messages from Teresa Boyd regarding Mr. Thomas. Detective Ileanna Salinas of the Yakima Police Department was informed of the messages, leading her to listen to two recorded jail telephone calls between Mr. Thomas and Ms. Boyd. Detective Salinas confirmed the telephone calls and messages were of similar content. Mr. Thomas was charged with felony violation of a domestic violence no contact order. [1] The charge was tried to a jury.

At trial, A.H. testified that she received Facebook messages from Ms. Boyd, who Mr. Thomas "identifies as a sister," on February 3, 2024, requesting "information on a box in [A.H.'s] garage." Rep. of Proc. (RP) at 77. Ms. Boyd wrote, "Hey, do you have any of [Mr. Thomas's] belongings. He said you have some bead work and his box." RP at 101. A.H. responded in the negative. Ms. Boyd then asked whether A.H. had "throw[n] them out" and that "[Mr. Thomas is] sure [A.H. has] his stuff." RP at 102. A.H. answered, "I'm very sure I do not have his stuff. He didn't have anything important in that box." RP at 102. Ms. Boyd claimed Mr. Thomas had told her about some "beads" and "certificates." RP at 103. A.H. replied, "[T]here was nothing in there at all, some random papers and pictures" and that "[Mr. Thomas] might want to check his stuff in Yakima, since he took all his important things with him and left me with the random

---

[1] At trial, Mr. Thomas stipulated to his prior convictions for violations of no contact orders.

papers." RP at 103. Screenshots of the messages were admitted into evidence. Defense counsel did not cross-examine A.H., nor did he object to the admission of the messages.[2]

A copy of the January 12, 2024, no contact order that prohibited Mr. Thomas from contacting A.H., either "directly" or "indirectly," was admitted into evidence. Ex. 1. The court also admitted a recording of the hearing when the no contact order was issued. At the hearing, the court commented to Mr. Thomas, who appeared remotely:

> And the Court [is] also signing a domestic violence no contact order, which prevents contact of any kind with [A.H.]. This order replaces the order that was served on you at your last hearing. And we'll get you copies of all three of these documents here shortly.
> . . . .
>
> All right. Well, thank you for appearing today by zoom and we'll get those documents here to [Mr. Thomas] shortly.

RP at 99-100.

Sergeant Michael Blake of the Yakima County Department of Corrections testified that she was employed as the "sergeant in internal affairs" and "also [took] care of the phone records and the . . . texting records." RP at 106. Sergeant Blake testified that "Securus is the company that the jail contracts with for all of the inmate phones." RP at 106. Sergeant Blake explained that Securus records the calls and maintains the records, and that officers are "able to access them." RP at 108. Sergeant Blake testified that there

---

[2] Defense counsel objected to the inclusion of the word "prison" in the exhibits. RP at 87-88. The State did not oppose redacting the word "prison" from the text messages. RP at 87-89.

is a "dashboard" where an officer "can search through calls" based on time, date, or inmate. RP at 108-09. The dashboard search shows the date and time of the call, the person's name, who they called, and the call sequence number. Based on the "dashboard printout of the calls that [Mr. Thomas] had made," Sergeant Blake found Mr. Thomas had made calls from the jail on February 3, 2024. RP at 109. Defense counsel did not cross-examine Sergeant Blake. Without objection from defense counsel, the court admitted a Securus call record created by Officer Salinas and the two recorded jail telephone calls.

Detective Salinas, who had investigated numerous no contact order violations, testified that she received a call from a Yakima County Prosecuting Attorney's Office victim witness employee on February 5, 2024, who believed Mr. Thomas had violated the no contact order through a third person. Detective Salinas contacted A.H. after listening to the recorded jail telephone calls between Mr. Thomas and Ms. Boyd. Detective Salinas stated A.H. "confirmed some information that [she] had heard in the jail phone call by reading [her] some text messages that [A.H.] had received." RP at 125.

Detective Salinas testified that she reviewed the telephone calls through a link sent to her by the victim witness employee. Detective Salinas stated she "pulled a call" from Securus that provided information on "the date, the time, the number of seconds which is the link, the duration of the call, the inmate calling, the account, the inmate account number is listed on there, and the number that was called." RP at 129. Detective Salinas

4

testified she attached a "snippet" from Securus to her report that contained "two WAV files which are the two jail phone calls [she] received from victim witness." RP at 130. In reference to the Securus record, Detective Salinas testified the telephone calls were associated with Mr. Thomas and his account number and occurred on February 3, 2024.

Detective Salinas described the first recorded jail call as "[a] conversation with a female regarding, I believe the first jail call would have been regarding some property that Mr. Roderick Thomas was looking to get back." RP at 132. In regard to the second recording, Detective Salinas stated that Mr. Thomas was "calling to reach out to inquire on this property that belonged to him." RP at 138. Defense counsel did not object to the admission of either recording.

Detective Salinas testified that A.H. sent her "photos via email of the conversation that she had with this other individual." RP at 144. The State asked, "Detective Salinas, what did you notice about these messages and the jail calls if any?" RP at 145. Detective Salinas replied, "The information in those messages was consistent with the conversation that she had with Mr. Roderick Thomas as she was reading—it appeared she—during the call when I listened to them, she was reading the messages and they were consistent with the messages that were provided to me." RP at 145. Defense counsel did not object to this testimony.

On cross-examination, defense counsel asked Detective Salinas about her experience in serving no contact orders:

5

[DEFENSE COUNSEL]: Okay. When you—when you were a patrol officer, did you ever have the opportunity to serve a no contact order to the defendant?

[DETECTIVE SALINAS]: Yes, I did.

[DEFENSE COUNSEL]: Okay. What do you do when you do that?

[DETECTIVE SALINAS]: When we serve an order we receive a packet with all the information from our records department. We go out and we serve the order. [D]epending on the type of the order, some people have to be removed, some people just get an order. So once the order is served, we—well, we confirm their identity, and then we mark that it's been served, we turn it back to our records department or our dispatch center and they enter it into WACIC.

[DEFENSE COUNSEL]: Okay. Do you do an affidavit of service?

[DETECTIVE SALINAS]: Yes.

[DEFENSE COUNSEL]: Okay. And in that affidavit, does it indicate what documents you serve to—and who you served them to, what time you served them?

[DETECTIVE SALINAS]: Yes.

[DEFENSE COUNSEL]: All the important information?

[DETECTIVE SALINAS]: Yes.

[DEFENSE COUNSEL]: Okay. Now, with respect to that order that you have, it's already signed by the judge though, isn't that correct?

[DETECTIVE SALINAS]: I no longer have it, but I believe it was.

[DEFEENSE COUNSEL]: Okay. And then when you give them to the defendant, it's effective from that point on, isn't that correct?

[DETECTIVE SALINAS]: Yes.

[DEEFENSE COUNSEL]: Okay. It's not effective until you serve it on the defendant, isn't that correct?

6

[DETECTIVE SALINAS]: Correct.

[DEFENSE COUNSEL]: Okay.  You weren't involved in serving a no contact order on Mr. Thomas were you?

[DETECTIVE SALINAS]: No.

[DEFENSE COUNSEL]: Okay.  Is there an affidavit of service in this matter?

[DETECTIVE SALINAS]: I wouldn't know, the Court issued it.

RP at 146-48.

During summation, defense counsel stated, "This is all going to come down to what Mr. Thomas knew."  RP at 183.  Defense counsel argued that although Mr. Thomas was told about the no contact order, he was not served with the order in open court.  Citing Detective Salinas' testimony, defense counsel argued, "[Y]ou have to get a court order signed by the judge, and then you got to go find the defendant and serve them, and then you have to have an affidavit of service."  RP at 183.  Defense counsel argued, "[T]he order is not effective until it's served on the defendant.  That's this case."  RP at 183-84.  Defense counsel informed the jury why he only questioned one witness: "Being that that was really the only witness that I—I asked any questions of, I thought that was a very, very important point to make sure that all you folks understood."  RP at 184.  Defense counsel concluded the topic, stating,

> [M]y argument is, ladies and gentlemen, is that there's lack of evidence to show that Mr. Thomas knew of this order.  He wasn't served the order in open court.  There's no affidavit of service to this affect that indicates that the—the detective served him, what day it was, when it was and what documents it were.

7

RP at 185.

The jury ultimately found Mr. Thomas guilty of felony violation of a no contact order. Mr. Thomas timely appeals.

ANALYSIS

Mr. Thomas argues his trial attorney was ineffective in failing to object to: (1) Sergeant Blake's testimony about Securus records, (2) Detective Salinas' testimony regarding the jail phone calls, (3) the admission of the two unauthenticated recorded jail telephone calls, and (4) Detective Salinas' opinion testimony. Mr. Thomas asserts he was prejudiced by his attorney's failure to object. We conclude defense counsel's lack of objections was a legitimate trial strategy and therefore affirm.

Defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be raised for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). We review ineffective assistance of counsel claims de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). In considering an ineffective assistance of counsel claim, we examine the entire record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

To prevail on a claim of ineffective assistance of counsel, an appellant bears the burden of showing (1) that his attorney's performance fell below an objective standard of

reasonableness based on consideration of all the circumstances and, if so, (2) that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *Id.* at 334-35. If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

There is a strong presumption that counsel's representation was effective. *McFarland*, 127 Wn.2d at 335. An appellant may overcome this presumption by showing that there was no legitimate tactical reason for the alleged prejudicial acts and omissions. *Id.* at 336. "When counsel's conduct can be characterized as legitimate trial strategy or tactic, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. Our scrutiny of trial counsel's performance is highly deferential. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

"A few or even several failures to object are not usually cause for finding that an attorney's conduct has fallen below the objective standard of conduct." *State v. Vazquez*, 198 Wn.2d 239, 250, 494 P.3d 424 (2021). "'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" *Id*. at 248 (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)).

To convict Mr. Thomas of felony violation of a no contact order, the State was burdened with proving beyond a reasonable doubt:

       (1) That on or about February 3, 2024, there existed a no-contact order applicable to the defendant;
       (2) That the defendant knew of the existence of this order;
       (3) That on or about said date, the defendant knowingly violated a restraint provision of this order;
       (4) That the defendant has twice been previously convicted for violating the provisions of a no-contact order; and
       (5) That the defendant's act occurred in the State of Washington.

Clerk's Papers at 31.

Trial counsel recognized the State had limited evidence proving Mr. Thomas knew of the existence of the no contact order. Mr. Thomas was not physically present in court when the order was entered, and the State failed to produce an affidavit of service showing that Mr. Thomas was personally served with a copy of the order. Employing an all-or-nothing approach, defense counsel focused the jury's attention on the State's inability to prove this element of the crime beyond a reasonable doubt. Defense counsel forewent cross-examining two of the State's three witnesses, highlighting the importance of the limited testimony he sought. Defense counsel also stipulated to Mr. Thomas' previous no contact order convictions and expedited the trial process to build rapport with the jury.

Defense counsel's strategy is apparent in his closing argument:

> I have got some interesting comments and I don't want to—I don't want to be short, but I haven't investigated a lot of the witnesses and what I'm going to tell you is our issue is very, very narrow. This is all going to come down to what Mr. Thomas knew.

RP at 182-83.

10

No. 40539-7-III
*State v. Thomas*

> Being that that was really the only witness that I—I asked any questions of, I thought that was a very, very important point to make sure that all you folks understood.

RP at 184.

> [W]e stipulated we agree to some things to expedite this, certainly the prior convictions and all those things.

RP at 184. Defense counsel then argued:

> [T]hat's what my argument is, ladies and gentlemen, is that there's lack of evidence to show that Mr. Thomas knew of this order. He wasn't served the order in open court. There's no affidavit of service to this affect that indicates that the—the detective served him, what day it was, when it was and what documents it were. That's what the detective testified that is included in the affidavit of service, and that can create a reasonable doubt for you.

RP at 185.

Our Supreme Court has held that an attorney's all-or-nothing approach, though risky, is a reasonable trial strategy. *Grier*, 171 Wn.2d at 42. In examining the entire record, Mr. Thomas has failed to show there was no legitimate tactical reason for his trial attorney to decide against objecting. Thus, Mr. Thomas has not overcome the strong presumption that his trial attorney's representation was effective. Defense counsel made a reasonable tactical decision to forego cross-examination and distracting objections and instead opted to focus the jury's attention on one element that he argued the State failed to prove. Mr. Thomas was not afforded ineffective assistance from his trial counsel.

11

No. 40539-7-III
*State v. Thomas*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Cooney, A.C.J.

WE CONCUR:

Lawrence-Berrey, J.

Murphy, J.

12