IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79626-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL BERNARD SMITH, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. —Michael Bernard Smith challenges his conviction for second degree assault by strangulation, contending the trial court erred in denying his request to discharge his retained attorney, denying that attorney's request to withdraw mid-trial, and granting his peremptory challenge of two African American jurors. Smith, in a statement of additional grounds, contends he received ineffective assistance of counsel in the cross-examination of his victim, the filing of his notice of appeal, and advice he received relating to his sentencing range. We conclude these arguments lack merit and affirm.

FACTS

In 2018, Smith and his former girlfriend, S.G., lived together in S.G.'s home in Federal Way. Smith's relationship with S.G., as she described it, was not healthy

Citations and pin cites are based on the Westlaw online version of the cited material.

and they often argued. S.G. recounted a violent history with Smith frequently hitting her and pulling her hair. S.G.'s three minor children who lived with her were afraid of Smith and often locked themselves in their bedroom.

On August 3, 2018, Smith became angry at S.G. when her father retrieved a vehicle he had lent to her. Smith and S.G. began to argue in their bedroom over the fact that S.G. did not own a car. When Smith demanded she turn her cell phone over to him, S.G.'s 10-year-old daughter, I.T., came in and asked if she could use her mother's phone. I.T. testified she did so because she heard her mother begging Smith not to take her phone away. She wanted to ask S.G. for the phone as a way to prevent Smith from taking it. Smith grabbed the phone from I.T. and closed the bedroom door. I.T. left to lock her siblings in their bedroom.

Smith then picked S.G. up from her neck with his hand. He squeezed her neck, impairing S.G.'s ability to breathe. She described it feeling like "little ants all over [her] face" like she was ready to pass out. As he squeezed her neck, he hit her in the face with his other hand. When he let go, Smith took S.G.'s phone and left the apartment.

S.G. ran out and told I.T. to go to the neighbor's apartment to borrow their phone. I.T. returned with the phone, which her mother used to call 911. Federal Way Police Officer Ricardo Cuellar responded to S.G.'s call. He saw a bruise forming on the left side of S.G.'s head and photographed her injury. He recounted S.G.'s report that Smith had strangled her. Although he saw no indication of any marks on S.G.'s neck, he did not deem that unusual because bruising from strangulation typically shows up later.

On August 10, 2018, the State charged Smith with second degree assault, domestic violence, by strangulation in violation of RCW 9A.36.021(1)(g). A jury found him guilty of this offense. The court sentenced Smith to 74 months in prison.

ANALYSIS

Smith challenges the trial court's denial of his request to discharge his retained attorney on the second day of his trial, and his attorney's mid-trial request to withdraw. He also argues the trial court violated his equal protection rights by applying an incorrect legal standard to evaluate the permissibility of his own peremptory challenges of two African American jurors. Finally, in a statement of additional grounds, Smith contends he received ineffective assistance of counsel in cross-examining S.G., in filing his notice of appeal, and advising him on his applicable sentencing range. We address each argument in turn.

A. Request to Discharge Counsel

Smith appeals the trial court's denial of his motion to discharge his retained counsel. He argues the trial court did not "engage in an inquiry regarding the request." The record, however, supports the trial court's discretionary decision to deny Smith's request.

The Sixth Amendment and article I, section 22 of the Washington State Constitution guarantees the right to select and be represented by one's preferred attorney. State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010). A criminal defendant who pays for his own attorney generally has a right to counsel of his choice. Id. But for a defendant with retained counsel, the right to counsel of choice is not absolute. State v. Hampton, 184 Wn.2d 656, 663, 361 P.3d 734 (2015). The

right to counsel of choice must be asserted "within a reasonable time before trial." State v. Early, 70 Wn. App. 452, 457, 853 P.2d 964 (1993). The trial court retains wide latitude in balancing " 'the right to counsel of choice . . . against the demands of its calendar.' " Hampton, 184 Wn.2d at 663. (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 152, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006)) (alteration in original). Further, courts are required to balance the defendant's choice of counsel against " 'the public's interest in the prompt and efficient administration of justice.' " Hampton, 184 Wn.2d at 663 (quoting Aguirre, 168 Wn.2d at 365).

We review this balancing decision for abuse of discretion. Hampton, 184 Wn.2d at 670. Where, as here, a request to discharge counsel would require a continuance to allow newly retained counsel to prepare for trial, we review a "trial court's denial of a continuance to determine whether [the denial] was 'so arbitrary as to violate due process.' " Hampton, 184 Wn.2d at 663 (quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)).

In Hampton, the Washington State Supreme Court identified a nonexhaustive list of factors the trial court may consider in determining whether to grant a continuance to allow substitution of private counsel, including "whether the request came at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar," whether the continuance would push the trial date past the speedy trial deadline, whether the defendant made the request as soon as he became aware of the need to retain new counsel, whether there was a rational basis to believe the defendant's request was merely a delaying tactic, and whether current counsel was prepared to start trial. 184 Wn.2d at 669-70. Because these

situations are highly fact specific and not all factors will exist in all cases "a trial court need not evaluate every factor in every case." Id, at 670.

Smith was charged with assault in the second degree in August 2018. At some point, Smith retained attorney Kevin McCament to represent him. On January 15, 2019, the first day of Smith's trial, McCament requested a short trial continuance because he and the State had a disagreement regarding Smith's scoring and criminal history. He recognized that it was unusual to request a continuance at that late stage but he felt a short, two day continuance would resolve the scoring dispute and might aid in resolving the matter short of trial. Defense counsel informed the court the speedy trial deadline was February 15, 2019 and his client opposed any continuance.

The trial court referred the continuance motion to the presiding judge, who denied the motion. When they returned to the trial court, Smith's attorney again asked for a brief recess to resolve the dispute over Smith's criminal history. In passing, he indicated "my client and I are not seeing eye to eye on things, and sometimes that happens." But he wanted time "to just look at the law with respect to this scoring situation." The court granted the request and recessed the trial until the following morning.

The next day, McCament indicated that he had completed his research, resolved the criminal history scoring issue, and was ready to proceed. Following arguments and rulings on motions in limine and just before jury selection was to begin, Smith stated "I want to fire him, you know, as my lawyer." Smith told the court that he did not feel "that [his attorney] was adequately representing [him]"

and indicated that he felt his lawyer was not communicating with him about what was going on with the case. When the court questioned whether he was asking to represent himself, Smith said "[n]o. I - - I can try and get another lawyer." The court denied Smith's request to discharge his attorney, indicating "[w]e're not going to delay this trial. You're being adequately represented, more than adequately. You don't get to delay the trial in this way."

We cannot conclude the court abused its discretion under Hampton. First, the request was untimely. Smith waited to make his request until after the trial court had ruled on motions in limine and when prospective jurors were waiting for jury selection to begin. Second, Smith did not indicate that he had another attorney in mind or that he had even taken steps to secure another attorney. Third, Smith expressed only vague and generalized concerns about strategic disagreements. Fourth, Smith's speedy trial expiration date was a month away, and Smith would have had little time to secure new counsel and have that attorney ready to begin trial without a speedy trial waiver from Smith. It would have been impossible for Smith to retain new counsel and still start trial before the February 15, 2019 speedy trial deadline. Finally, Smith's attorney was ready to proceed.

Smith contends the trial court erred in failing to engage him in an inquiry as to the nature of his dissatisfaction with his counsel. Relying on State v. Lopez, 79 Wn. App. 755, 904 P.2d 1179 (1995), Smith argues that the trial court was required to make a detailed investigation into the underlying reasons for his dissatisfaction with counsel and that the failure to inform itself "of the facts on which to exercise

its discretion" amounted to an abuse of discretion. Smith's reliance on Lopez is misplaced for two reasons.

First, Lopez does not support the proposition that a trial court must inquire into the reasons a defendant wants to discharge retained, rather than appointed, counsel. Indigent defendants have a constitutional right to effective appointed counsel, but not to choose the lawyer appointed by the court. Hampton, 184 Wn. 2d at 662-63. Because Lopez had appointed counsel, the court concluded that the trial court abused its discretion in denying Lopez's request for the appointment of new counsel without asking him why he sought new counsel. Lopez, 79 Wn. App. at 767. But Lopez was premised on the need to ensure that an indigent defendant's right to appointed counsel under the Sixth Amendment is not impaired. 79 Wn. App. at 766. Lopez does not apply in the context of retained counsel.

Second, the record does not support Smith's contention that the trial court summarily denied his motion without inquiring into the reasons for the request, as occurred in Lopez. The trial court asked Smith why he sought new counsel. Smith explained he did not believe counsel was adequately representing him or communicating with him. The trial court knew the basis of Smith's request before denying it, making this case distinguishable from Lopez.

Smith contends the trial court had no basis for concluding that his request to discharge retained counsel was a delay tactic given that he had objected to his attorney's continuance motions throughout his case. But a reasonable judge could have concluded that Smith's last minute request to switch retained attorneys, which would have inevitably led to a trial continuance, was an attempt to push off

his trial, despite his protestations to the contrary. Although the record is silent as to when he retained McCament, there is nothing to suggest Smith lacked the opportunity to evaluate his attorney's handling of the case and to decide whether to retain a different attorney well before trial. A reasonable judge could have concluded that Smith could have made the request in a timely manner and his decision not to do so could only be attributable to a desire to delay trial.

The trial court's decision to deny Smith's motion to discharge retained counsel on the second day of trial was not an abuse of discretion.

B. Counsel's Request to Withdraw

Next, Smith argues that the trial court erred when it denied his attorney's motion to withdraw mid-trial after reporting that Smith had threatened to physically harm him. Smith contends that the trial court denied his Sixth Amendment and article I, section 22 right to counsel because his counsel had a "serious, irreconcilable conflict" that impacted his ability to represent Smith. We reject this argument as well.

We review a trial court's denial of a motion to withdraw for abuse of discretion. Hampton, 184 Wn.2d at 670. A trial court's decision will be affirmed unless manifestly unreasonable, is exercised on untenable grounds, or made for untenable reasons. Id. A decision will be deemed to be based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or if reached applying the wrong legal standard. Id. And a decision is manifestly unreasonable if the court, despite applying the correct legal standard,

adopts a view that no reasonable person would take and arrives at a decision outside the range of acceptable choices. Id. at 670-71.

On January 17, 2019, the third day of trial, the State called S.G., Smith's victim, and her 10-year-old daughter, I.T., to testify about Smith's assault. On January 22, 2019, the morning of the fourth day of trial, McCament appeared before the trial court, outside the presence of his client, and requested to withdraw. He reported that Smith had threatened him the day before during a visit in the jail. He informed the court that Smith had berated and criticized him and the meeting "did not go well." McCament reported that Smith became physically intimidating and told him "I got something for you, and you're not going to like it." He told the court he had learned that Smith had gang affiliations, that Smith "terrified" him, and that he feared for his life and for his family. Counsel said:

> I tried to do the job that I believe I should do and do my duty as a lawyer, but I – under these conditions, Your Honor, I just can't continue. I'm afraid to even be by him. If the verdict came in, I would not even want to be near him.

He said "I can't do this anymore."

The trial court accepted counsel's fears as genuine and recessed to consider its options. When the proceedings resumed, the trial court asked for Smith to be brought into the courtroom, advised Smith that he had the right to remain silent, and asked defense counsel to repeat what he had said to the trial court when Smith was not present. Defense counsel again recounted how Smith had berated, criticized, and intimidated him. Counsel indicated that Smith had put his face up to the glass, "towering over me in a buffed-up fashion" and threatened him. Counsel then reiterated his fears and stated "I just can't do it anymore."

The State expressed concerns that Smith was engaging in misconduct as a delay tactic. The State pointed to Smith's "numerous attempts" to get rid of his defense counsel as evidence justifying such a conclusion.

Smith denied that he was trying to delay his trial, telling the court "you know I've been trying to go to trial since day one." Smith told the trial court that he and counsel did not "see[] eye to eye on the strategy" and that he did not feel he was being "represented right." When the trial court asked Smith if he would prefer to represent himself, Smith made it clear that he did not want to represent himself and wanted to hire another lawyer.

The trial court denied the motion to withdraw and called for another recess, suggesting Smith and McCament use the time "to attempt to reestablish rapport." Smith expressed disbelief that his counsel was not being allowed to withdraw:

> So you -- are you going to keep him on my -- on the case? Like we have -- you see like we having a disagreement, and he said I threatened him and whatnot and this and that. And then like this for the -- on my case, like he ain't going to represent me right, then he ain't been doing, anyway, and you still keep him on my case, uhm, after he said I threatened him and his family --

After the recess, Smith and his attorney asked to be heard on the matter again. Counsel told the court he was "contemplating a disregard of this Court's order" and that he believed Smith had "waived that valid right to have assistance of counsel simply by way of his conduct." Smith reiterated that he felt it would be irresponsible to keep his defense counsel.

The court, citing State v. Fualaau, 155 Wn. App. 347, 288 P.3d 711 (2010), refused to reconsider its decision, indicating that "if Mr. Smith were to engage in

any conduct . . . further conduct . . . that would result in forfeiture of his right to counsel" but that the court would not allow counsel to withdraw.

Thereafter, Smith's attorney continued to represent him through the conclusion of the trial and at a subsequent sentencing hearing.

Smith, relying on In re Pers. Restraint of Stenson, 142 Wn.2d 710, 16 P.3d 1 (2001) and United States v. Moore, 159 F.3d 1154 (9th Cir. 1998), argues the trial court erred in denying counsel's motion to withdraw because Smith and his attorney suffered an "irreconcilable conflict of interest."  In Stenson, our Supreme Court recognized that "[i]f the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates the defendant's Sixth Amendment right to effective assistance of counsel."  142 Wn.2d at 722.  In Moore, the Ninth Circuit recognized that a defendant has a right to conflict free representation under the Sixth Amendment.  159 F.3d at 1157.

But to prevail on this claim, Smith must establish that "an actual conflict of interest adversely affected his lawyer's performance."  State v. Regan, 143 Wn. App. 419, 427, 177 P.3d 783 (2008); Moore, 159 F.3d at 1157.  The mere possibility that a conflict of interest exists will not suffice.  State v. Davis, 141 Wn.2d 798, 861, 10 P.3d 977 (2000).  A conflict of interest exists when defense counsel "owes duties to a party whose interests are adverse to those of the defendant."  Fualaau, 155 Wn. App. at 362, citing State v. White, 80 Wn. App. 406, 411-12, 907 P.2d 310 (1995).  " 'Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.' "  State v. Dhaliwal, 150 Wn.2d 559, 573, 79 P.3d

432 (2003), quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333). " 'The determination of whether a conflict exists precluding continuing representation of a client is a question of law and is reviewed de novo.' " State v. Vicuna, 119 Wn. App. 26, 30–31, 79 P.3d 1 (2003) (quoting State v. Ramos, 83 Wn. App. 622, 629. 922 P.2d 193 (1996)).

Here, Smith does not contend his trial attorney owed a duty to a third party whose interests were adverse to Smith's interests. Instead, he contends McCament's expressions of fear and concerns for his personal safety created a conflict of interest between Smith and the attorney. But if Smith threatened his attorney, this misconduct toward counsel does not create a conflict of interest requiring counsel to withdraw. Fualaau, 155 Wn. App. at 359. A defendant cannot force the withdrawal of his attorney by threatening him. Id.

Even if Smith could establish that his trial attorney's fear of bodily injury constituted an actual conflict of interest, his claim still fails because he has not demonstrated that the conflict adversely affected counsel's performance. To demonstrate that a conflict had an adverse effect on counsel's performance, Smith must show that a plausible alternative defense strategy was available, but was not pursued, because of the conflict with the attorney's other interests. Regan, 143 Wn. App. at 428.

Smith maintains the conflict did impact counsel's performance pointing to the fact that counsel requested a jury instruction for second degree assault under RCW 9A.36.021(1)(a), rather than under RCW 9A.36.021(1)(g), the theory of culpability advanced by the State. But counsel filed proposed instructions on

January 15, 2019, well in advance of the events leading up to counsel's request to withdraw on January 22, 2019, and we can see no causal connection between the two.

Moreover, even if counsel erred in submitting this proposed instruction, Smith has not demonstrated prejudice. Counsel submitted two proposed "to convict" instructions, one based on reckless infliction of substantial bodily harm, a crime the State had not charged, and one based on strangulation. The court's instructions included only one "to convict" instruction based on strangulation. To the extent counsel submitted inappropriate proposed instructions in advance of trial, it had no effect on how the jury was instructed.

Smith argues that counsel also made errors in identifying the numbers of the jurors he sought to excuse, leading to the dismissal of at least one juror counsel had not intended to dismiss. But the parties selected the jury on January 16, 2019. Counsel sought to withdraw on January 22, 2019, based on an incident that occurred the day before, on January 21, 2019. Smith has not demonstrated any causal connection between these two events.

Smith argues that counsel's statement that "I can't do this" demonstrates that his advocacy was adversely impacted. But after making this statement, counsel in fact continued to represent Smith at trial and at sentencing. The record does not support Smith's contention that counsel was somehow paralyzed with fear and unable to proceed.

Indeed, the record reveals counsel had a coherent defense strategy: he argued the State failed to prove Smith strangled S.G. Counsel pointed out that

S.G. had no physical injuries to her face or neck, S.G.'s version of events was inconsistent with a lack of visible injuries, and S.G. had a motive for fabricating the incident when Smith left her for a different woman. Before he moved to withdraw, counsel cross-examined S.G. and elicited evidence from her to support this theory of the case. Counsel also elicited evidence from I.T. that she did not see Smith harm her mother.

After his motion to withdraw was denied, counsel was able to continue to develop this theory of defense. During his cross examination of Officer Cuellar, counsel elicited evidence that when the officer arrived at S.G.'s apartment, she was calm, able to answer his questions, having no problems breathing, not in pain, and declined any medical treatment. He elicited evidence from Federal Way Police Detective Billy Forrester, who attempted unsuccessfully to locate the neighbor whom S.G. had identified as having helped her contact the police on the night of the assault, that while he was able to speak with S.G. once by phone, he was subsequently unable to locate her or the alleged neighbor. He too confirmed the photographs taken of S.G. on the night of the assault showed no indication of any injury. We find no support for Smith's contention that his attorney was incapable of presenting a coherent defense because he was too afraid of Smith to do so.

Smith has not demonstrated an actual conflict of interest that adversely affected counsel's performance. The decision to deny counsel's motion to withdraw was thus not manifestly unreasonable.

C. Smith's Peremptory Challenges

Next, Smith argues that the trial court erred in allowing him to use peremptory challenges to remove two African American jurors from the jury. Smith contends the trial court misapplied GR 37 and our Supreme Court's revised Batson[1] test. The State contends Smith invited the error and cannot raise the issue for the first time on appeal. We agree with the State.

We review Batson challenges for clear error and defer to the trial court to the extent its rulings are factual. State v. Jefferson, 192 Wn.2d 225, 429 P.3d 467 (2018). But the invited error doctrine precludes a party from setting up an error at the trial court and then complaining of it on appeal. State v. Henderson, 114 Wn.2d 867, 870-71, 792 P.2d 514 (1990); State v. Johnson, 147 Wn. App. 276, 194 P.3d 1009 (2008). The invited error doctrine applies even when the alleged error is of constitutional magnitude. City of Seattle v. Patu, 147 Wn.2d 717, 720, 58 P.3d 273 (2002). To determine whether the invited error doctrine is applicable to a case, we consider the tactical choices Smith made and consider whether the defendant "affirmatively assented to the error, materially contributed to it, or benefitted from it." State v. Momah, 167 Wn. 2d 140, 154, 217 P.3d 321 (2009).

At trial, defense counsel peremptorily struck potential jurors 28 and 32, both of whom were African American. The court excused the venire so that it could establish that the jurors of color were excused for appropriate reasons. Defense counsel explained that he struck potential juror 32 because she was not engaged in the process and he could not "recall her ever saying anything, really, at all." With

---

[1] Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

respect to potential juror 28, counsel referred to his demeanor, saying "I took it - - I took a guess that maybe because he was a male he might have had some prejudice against my client in such a kind of a case." Counsel went on to say "his behavior said to me that he just . . . almost like he didn't want to be here." The court found that counsel had a "proper basis" for striking potential juror 32 and a "non-racially motivated" reason for striking potential juror 28.

Smith argues the trial court, in applying GR 37, failed to apply the correct legal standard in determining whether the jurors were stricken for discriminatory reasons, requiring reversal. But the record is clear that Smith invited this error. Smith's counsel made tactical choices to exclude two prospective jurors who he believed to be uninterested in serving on the jury. After articulating the basis for the peremptory challenges and hearing the trial court's analysis, Smith did not alert the trial court to the fact that it had applied an incorrect legal standard in evaluating the challenges. To the contrary, he argued at trial that the strikes were proper and not motivated by racial considerations. He both assented to the error and materially contributed to it at trial. If the trial court erred in failing to comply with either constitutional requirements or court rules of procedure relating to peremptory challenges, it was Smith's own conduct that induced the court to do so. Because Smith invited the error at trial, he is now precluded from claiming on appeal that it is reversible error.

D. Cumulative Errors

Smith argues the cumulative effect of the errors in his case require reversal of his conviction and a new trial. Smith argues that each of the above alleged

errors built upon each other "augmenting their prejudicial effect" and depriving Smith of a fair trial. We disagree.

Cumulative error is established when several trial court errors do not warrant reversal when taken alone but the combined effect of the errors denied the defendant a fair trial. State v. Hodges, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). Because the trial court did not abuse its discretion in denying the motion to discharge counsel and in denying counsel's later motion to withdraw and Smith invited any error related to the peremptory challenges, we conclude Smith was not deprived of a fair trial.

E. Statement of Additional Grounds

In a statement of additional grounds, Smith appears to argue that he received ineffective assistance of counsel for three reasons. First, he contends that his attorney failed to impeach a witness for untruthfulness under ER 609(b) and 608(a)(b). Second, Smith argues that his attorney did not correctly file his notice of appeal and that he and another attorney were left to correct the error. Finally, he contends that his attorney gave him incorrect legal advice regarding his sentencing ranges which caused Smith to turn down a plea deal from the State.

A criminal defendant has the right to effective assistance of trial counsel under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. In re Pers. Restraint of Davis, 152 Wn.2d 647, 672, 101 P.3d 1 (2004). To establish that the right to effective assistance of counsel has been violated, the defendant must make two showings: that counsel's representation was deficient, and that counsel's deficient representation caused

prejudice. Id. (quoting State v. McFarland, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995)). To establish deficient performance, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. Id. Trial strategy and tactics cannot form the basis of a finding of deficient performance. State v. Cienfuegos, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001) (quoting State v. Hendrickson, 129 Wn.2d 61, 77–78, 917 P.2d 563 (1996)).

Prejudice can be shown only if there is a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. Davis, 152 Wn.2d at 672–73. The reasonableness of trial counsel's performance is reviewed in light of all of the circumstances of the case at the time of counsel's conduct. State v. Lord, 117 Wn.2d 829, 883, 822 P.2d 177 (1991).

With regard to Smith's first claim, the extent of cross-examination is a matter of judgment and strategy. Davis, 152 Wn.2d at 720. This court will not find ineffective assistance of counsel based on trial counsel's decisions during cross-examination if counsel's performance fell within the range of reasonable representation. Id. Moreover, in order to establish prejudice for the failure to effectively cross-examine a witness, the defendant must show that the testimony that would have been elicited on cross-examination could have overcome the evidence against the defendant. Id.

Smith's argument that his attorney failed to impeach S.G. for truthfulness amounts to an assertion that trial counsel could have done a better job at cross-examination. This is not enough to demonstrate deficient performance. State v. Johnston, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007).

With regard to Smith's claim relating to his notice of appeal, his attorney filed this notice within days of the entry of the judgment and sentence. Although the notice of appeal contained a typographical error, the notice was timely filed. Smith was able to correct the clerical mistake by filing an amended notice of appeal, and the State has not challenged the timeliness of Smith's appeal. Smith has not demonstrated that he has suffered any harm from this error.

Smith's third claim relating to advice he received during plea negotiations involves facts outside the record before this court. Where, as here, the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Affirmed.

Andrus, A.C.J.

WE CONCUR:

Dwyer, J.            Appelwick, J.

- 19 -