**FILED**
**APRIL 15, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39930-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE MICHAEL STURM, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Jesse Sturm, Jr., appeals the denial of his motion to withdraw his guilty plea and attempts to appeal the imposition of one community custody condition. The State responds that the trial court properly denied the motion, and that Mr. Sturm's community custody condition is not properly before this court.  We agree with the State.

BACKGROUND

On July 10, 2020, Mr. Sturm, who was then 35 years old, met a 13-year-old girl named "Sunny" through a Craigslist advertisement.  In reality, the advertisement was

posted and ran by an undercover officer with the Southeast Regional Internet Crimes Against Children Task Force.  Over the next few weeks, Mr. Sturm and Sunny exchanged sexually graphic and explicit messages, including Mr. Sturm describing the kind of sexual activity they would engage in when they met.  Mr. Sturm repeatedly expressed concern about being caught by law enforcement to Sunny.  Mr. Sturm ceased his communications with Sunny on July 30, 2020.

On May 20, 2021, Mr. Sturm responded to another advertisement on the same website and began communicating with Sunny again.   Mr. Sturm and Sunny again discussed vaginal and oral sex from May 20 to May 26.  Mr. Sturm sent Sunny a picture of his face and erect penis and explained to Sunny that he had met another young girl on the same website and engaged in vaginal sex with her.  Mr. Sturm and Sunny then made plans to have sex at Sunny's house after meeting in a Richland, Washington park. Mr. Sturm was arrested when he arrived at the park.

Following his arrest, Mr. Sturm admitted he met 13-year-old Sunny on Craigslist and that they only spoke about sex.  He also admitted that he asked her to perform sexual acts on him and that he intended to take Sunny back to her home so they could have sex. Mr. Sturm further confessed: (1) he "had a sexual interest in children and needed help[;]" (2) he used an application called Discord to target children; (3) he had a prior sexual relationship with a 13-year-old named Maria; (4) he stopped talking to Sunny initially because he became nervous, but he overcame his nervousness after having sexual

2

relations with Maria; and (5) he had conversations with a 13-year-old girl, who had a 12-year-old sister, and discussed the possibility of having sex with both of them simultaneously. Clerk's Papers (CP) at 58. Mr. Sturm further admitted to paying a 15-year-old girl with Amazon gift cards to send him naked pictures of herself.

The State charged Mr. Sturm with attempted rape of a child in the second degree and communicating with a minor for immoral purposes. Shortly thereafter, the trial court ordered Mr. Sturm to undergo a competency evaluation. A psychological evaluation was performed by Jonathan Ryan, PsyD, following which Mr. Sturm was diagnosed with "Autism Spectrum Disorder, Level 2, With accompanying intellectual impairment." CP at 121. Notwithstanding the diagnosis, the trial court found Mr. Sturm competent to proceed to trial.

Around the time Dr. Ryan released his evaluation, Mr. Sturm's trial counsel contemplated pursing an entrapment defense. However, after reviewing case law and the entrapment jury instructions, Mr. Sturm's attorney was concerned that an entrapment defense would likely be unsuccessful given Mr. Sturm's recorded statement to law enforcement that he had a predisposition to commit the crime. Mr. Sturm ultimately pleaded guilty to attempted rape of a child in the second degree.

Prior to sentencing, Mr. Sturm retained a new attorney who later filed a "Motion to Set Aside Change of Plea Under CR.R.7.6 [sic]."[1]  CP at 22-32.  In the motion, Mr. Sturm alleged his previous attorney was ineffective because he failed to apprise him of his ability to request an entrapment instruction to the jury if the case proceeded to trial, and discounted, without investigation, how Mr. Sturm's mental limitations might have affected potential defenses.

The trial court denied Mr. Sturm's motion on February 3, 2023.  The trial court found that Mr. Sturm failed to demonstrate his mental deficiencies made him more susceptible to responding to a 13-year-old's advertisement to arrange sex and that his predisposition to the crime was strongly supported by his admissions that he previously had sex with another 13-year-old.

Mr. Sturm was later sentenced to 58.5 months to life of incarceration.  The court also ordered Mr. Sturm to comply with numerous community custody conditions.

Mr. Sturm timely appeals the denial of his motion to withdraw his guilty plea.

ANALYSIS

Mr. Sturm contends the trial court erred when it denied his motion to withdraw his guilty plea because he was denied effective assistance of counsel prior to pleading guilty

---

[1] We assume the motion was intended to be brought under CrR 4.2(f) as CrR 7.6 relates to probation.

4

to attempted rape of a child in the second degree. We disagree that Mr. Sturm's first attorney was ineffective and, even if Mr. Sturm were able to establish otherwise, he is unable to show prejudice.

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. *State v. A.N.J.*, 168 Wn.2d 91, 106, 225 P.3d 956 (2010).

The requirements for a valid guilty plea are mandated by the United States Constitution and are detailed in CrR 4.2. "Due process requires that a defendant's guilty plea must be knowing, intelligent, and voluntary." *State v. Codiga*, 162 Wn.2d 912, 922, 175 P.3d 1082 (2008). CrR 4.2(d) also provides that "[t]he court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." Further, under CrR 4.2(f), a court must allow a defendant to withdraw a guilty plea if it is necessary to correct a manifest injustice. A manifest injustice occurs where a defendant is denied effective counsel. *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996).

Defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). "The Sixth Amendment right to effective assistance of counsel encompasses the plea process." *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). In order to establish the plea was involuntary due to counsel's

inadequacy, the defendant must satisfy the two-part *Strickland*[2] test for ineffective assistance claims. *Id.* Ineffective assistance of counsel claims are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

The defendant, here, Mr. Sturm, bears the burden of showing (1) that his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When counsel's conduct can be characterized as a legitimate trial strategy or tactics, [their] performance is not deficient." *Kyllo*, 166 Wn.2d at 863.

---

[2] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

With respect to the objective standard of reasonableness prong, trial counsel has a duty to investigate all reasonable lines of defense but has no duty to pursue strategies that reasonably appear unlikely to succeed. *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011). "[F]ailure to investigate . . . when coupled with other defects, can amount to ineffective assistance of counsel." *A.N.J.*, 168 Wn.2d at 110. "The degree and extent of investigation required will vary depending upon the issues and facts of each case, but . . . at the very least, counsel must reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty." *Id.* at 111-12.

Even if we find that counsel's performance was deficient, a defendant must affirmatively prove prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). This requires more than simply showing that "the errors had some conceivable effect on the outcome." *Strickland*, 466 U.S. at 693. A defendant demonstrates prejudice by showing that the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

Mr. Sturm contends that he was prejudiced by his first attorney's ineffectiveness because the attorney failed to (1) investigate the possibility of an entrapment defense, (2) consult a psychological expert on his mental deficiencies, and (3) interview witnesses. However, these "failures" are either misapprehended by Mr. Sturm or they do not amount

7

to ineffective assistance of counsel because they were objectively reasonable under the circumstances.

First, despite Mr. Sturm's claims, his first lawyer *did* investigate the possibility of an entrapment defense, "including reviewing numerous cases . . . [and] entrapment jury instructions." CP at 72. Given Mr. Sturm's admissions regarding his sexual predisposition toward minors, entrapment appeared "reasonably . . . unlikely to succeed," and thus his first lawyer "had no duty" to pursue it. *Brown*, 159 Wn. App. at 371; *see* RCW 9A.16.070(b)(2) (requiring the defendant to prove that he "was lured or induced to commit a crime which the actor had not otherwise intended to commit . . . The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.").

Second, Mr. Sturm's first lawyer's decision to present Mr. Sturm with the State's offer of settlement, without consulting a psychological expert or interviewing witnesses, was objectively reasonable under the circumstances. Despite Mr. Sturm's claim that his first lawyer should have consulted a psychological expert to investigate the plausibility of an entrapment defense, Mr. Sturm had already been evaluated by Dr. Ryan who found him competent to proceed to trial. Furthermore, assuming Mr. Sturm's accusation that his first lawyer failed to interview any witness is accurate, such a deficiency was innocuous under the circumstances. Mr. Sturm admitted to law enforcement officers that he targeted young girls for sex, and the electronic written communications between he

8

and the undercover detective who posed as a 13-year-old girl were preserved. Even if we were to assume his first lawyer was at fault for failing to interview witnesses, one errant "action[ ] alone is insufficient to establish ineffective assistance of counsel." *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 882, 16 P.3d 601 (2001).

In light of Mr. Sturm's admissions to law enforcement, his admitted prior sexual activity with and predisposition toward adolescent girls, and the results of his psychological evaluation, Mr. Sturm's first attorney was not deficient in his representation of Mr. Sturm.

Furthermore, even if Mr. Sturm's first attorney's performance was deficient, Mr. Sturm has failed to demonstrate he was prejudiced. Rather, Mr. Sturm simply alleges that his first attorney's "lack of investigation fell below an objective standard of reasonableness and prejudiced Mr. Sturm" because he "was unable to truly make an informed choice about going to trial or entering a plea." Appellant's Open. Br. at 12. Assuming counsel was deficient, Mr. Sturm fails to meaningfully explain how he was prejudiced. Additionally, Mr. Sturm's declaration that "I would have gone to trial had I known that I could have gotten an entrapment instruction" is equivocal. CP at 71. As explained above, it is unlikely the trial court would have instructed the jury on the defense of entrapment given Mr. Sturm's admitted predisposition toward minor girls. Mr. Sturm has failed to demonstrate he was prejudiced by his first attorney's alleged deficient performance.

9

Because Mr. Sturm's first attorney was not deficient, Mr. Sturm has failed to show that withdrawing his guilty plea was necessary to correct a manifest injustice. Thus, the trial court did not abuse its discretion when it denied Mr. Sturm's motion to withdraw his guilty plea.

Mr. Sturm next argues that community custody condition 16 in Appendix H to the judgment and sentence is unconstitutionally vague and should be struck. The State responds that this issue is not properly before this court because Mr. Sturm did not appeal the judgment and sentence. We agree with the State.

A notice of appeal must "(1) be titled a notice of appeal, (2) specify the party or parties seeking the review, (3) *designate the decision or part of decision which the party wants reviewed*, and (4) name the appellate court to which the review is taken." RAP 5.3(a) (emphasis added). We will disregard the defects in the form of a notice of appeal "if the notice clearly reflects an intent by a party to seek review." RAP 5.3(f).

Here, the notice of appeal does not designate the judgment and sentence. Rather, the notice of appeal states that Mr. Sturm is appealing "[t]he denial of [his] Motion to Withdraw Plea." Notice of Appeal, *State v. Sturm*, No 39930-3-III (August 17, 2023). The only document attached to the notice of appeal is the trial court's "Ruling on Defendant's Motion to Withdraw Guilty Plea." *Id.*

No. 39930-3-III
*State v. Sturm*

We decline review of condition 16 of Appendix H to the judgment and sentence. Mr. Sturm's challenge to the condition may be presented through a personal restraint petition. *McFarland*, 127 Wn.2d at 339.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:


_____
Lawrence-Berrey, C.J.


_____
Staab, J.

11